**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| TRICIA VINEYARD, individually and on behalf of all other similarly- situated current citizens of Illinois and the United States, <br><br>         Plaintiffs, <br><br> v. <br><br> LA TERRA FINA USA, LLC, <br><br>         Defendant. | Case No. 3:24-cv-00704-NJR |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

| | |
|---|---|
| Matthew H. Armstrong <br> matt@mattarmstronglaw.com <br> ARMSTRONG LAW FIRM LLC <br> 8816 Manchester Rd., No. 109 <br> St. Louis, MO 63144 <br> (314) 258-0212 | Robert L. King <br> king@kinglaw.com <br> The Law Office of Robert L. King <br> 9506 Olive Blvd., Suite 224 <br> St. Louis, Missouri 63132 <br> (314) 246-0702 |
| David C. Nelson <br> dnelson@nelsonlawpc.com <br> NELSON & NELSON, P.C. <br> 420 North High Street <br> P.O. Box Y <br> Belleville, IL 62222 <br> (618) 277-4000 | Stuart L. Cochran <br> scochran@condontobin.com <br> CONDON TOBIN SLADEK <br> THORNTON NERENBERG, PLLC <br> 8080 Park Lane, Suite 700 <br> Dallas, Texas 75231 <br> (214) 265-3800 |

*Attorneys for Plaintiff and the Putative Class*

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 2

I.   THE "NATURAL FLAVOR" AND "ORGANIC" REGULATIONS DEFENDANT
     CITES ARE IRRELEVANT AND DO NOT PREEMPT PLAINTIFF'S CLAIMS. .............. 2

     A.   The "natural flavor" and "organic" regulations do not authorize Defendant's claim of
          "no artificial preservatives." ................................................................................ 3

          1.   The FDA's regulation governing use of "natural flavor" is irrelevant to
               Plaintiff's challenge of Defendant's use of "no artificial preservatives."...................... 3

          2.   The federal regulation of "organic" descriptors on food labels is irrelevant to
               Plaintiff's challenge of Defendant's use of "no artificial preservatives."...................... 3

          3.   The "reasonable consumer" standard of state law governs—and here
               prohibits—Defendant's claim of "no artificial preservatives." ...................................... 4

          4.   Plaintiff's state law claims are not preempted. ................................................................. 5

II.  PLAINTIFF'S ALLEGATION THAT LA TERRA FINA USES MANUFACTURED
     CITRIC ACID IS A CONCRETE ALLEGATION OF FACT ENTITLED TO A
     PRESUMPTION OF TRUTH AT THE PLEADING STAGE. .............................................. 6

     A.   Plaintiff's allegations that Defendant adds an artificial preservative to its dips is both
          plausible and sufficient under Rule 8. ................................................................... 7

     B.   Allegations do not need to be detailed to be "plausible."...................................... 8

          1.   *Twombly* and *Iqbal* require inferences drawn in a complaint to be plausible................ 9

          2.   *Tarzian* and cases like it are distinguishable.................................................................. 11

     C.   Defendant's claim that Plaintiff must allege with detail that citric acid "functions" as a
          preservative in the dips is wrong. ......................................................................... 12

III. TO THE LIMITED EXTENT RULE 9(B) APPLIES, PLAINTIFF'S ICFA
     ALLEGATIONS SATISFY THE RULE'S PLEADING STANDARD. .............................. 13

     A.   Rule 9(b)'s pleading standard does not apply to Plaintiff's nonfraud allegations.............. 13

     B.   Plaintiff's fraud allegations satisfy Rule 9(b)'s pleading standard................................... 14

     C.   Plaintiff has sufficiently pled ICFA unfairness. ........................................................... 18

IV. PLAINTIFF HAS SUFFICIENTLY PLED BREACH OF WARRANTY. ........................... 19

V.  PLAINTIFF HAS SUFFICIENTLY PLED UNJUST ENRICHMENT. ............................. 20

CONCLUSION ................................................................................................................... 20

## INTRODUCTION

Defendant La Terra Fina markets nine dip-spreads with a promise on the labels: "NO ARTIFICIAL FLAVORS, COLORS OR PRESERVATIVES." Despite its claim, La Terra Fina adds an artificial preservative to its dips—manufactured citric acid. Citric acid is a common food additive used extensively to extend shelf life. Plaintiff Tricia Vineyard brought this action challenging La Terra Fina's claim that the dips contain no artificial preservatives. Defendant has moved to dismiss contending that Ms. Vineyard has not sufficiently pled any of her claims.

## BACKGROUND

Two key terms in this case are "artificial" and "preservative" because Defendant contends that Plaintiff has not sufficiently pled either. Defendant's back-label ingredients list includes citric acid.

> Citric acid naturally exists in fruits and vegetables. However, it is not the naturally occurring citric acid, but the manufactured citric acid (MCA) that is used extensively as a food and beverage additive. Approximately 99% of the world's production of MCA is carried out using the fungus *Aspergillus niger* since 1919.

Sweis, I. E., & Cressey, B. C., "Potential role of the common food additive manufactured citric acid in eliciting significant inflammatory reactions contributing to serious disease states: A series of four case reports," *Toxicol Rep.*, Aug. 9, 2018 https://doi.org/10.1016/j.toxrep.2018.08.002.

Defendant contends that Plaintiff has insufficiently alleged that the manufactured citric acid it adds to its dips "functions" as a preservative. Plaintiff addresses whether citric acid "functions" as a preservative later, but for now it is sufficient to note that in one of the very regulations La Terra Fina cites in its motion, 21 C.F.R. § 101.22, the FDA defines "chemical preservative" as "any chemical that, when added to food, tends to prevent or retard deterioration thereof." 21 C.F.R. § 101.22(5). Relying on that provision, the FDA has on two occasions warned other manufacturers who added citric acid to their foods that they were "misbranded" because of the manufacturers' failure "to declare these preservatives with a description of their functions." Ex. A (Food & Drug

1

Admin., *Warning Letter: Chiquita Brands/Fresh Express Inc.* (Oct. 6, 2010) (citing 21 C.F.R. §

101.22)); Ex. B (Food & Drug Admin., *Warning Letter: Hirzel Canning Co.* (Aug. 29, 2001)

("FDA's policy regarding the use 'natural', mean that nothing artificial or synthetic has been

included, or has been added to, a food that would not normally expected to be in the food.

Therefore, ***the addition of*** calcium chloride and ***citric acid to these products preclude use of the***

***term "natural"*** to describe this product.")) (emphasis added).[1]

   In her complaint, Plaintiff has alleged that Defendant adds "food grade citric acid" to its dip-

spreads and that the kind of citric acid it uses in its dips is "a commercially-manufactured,

synthetically-produced, highly-processed food additive sold in the form of a white powder" and

"does not exist in nature." ECF No. 1-1 (Complaint) at 8 ¶¶ 3-5. But the truth or falsity of Plaintiff's

allegation is not the lodestar for determining the sufficiency of her allegations. Whether the

allegations present a cogent, logically consistent roadmap to Defendant's *potential* liability is all

that matters. If the factual allegations—taken at face value—suggest Defendant is liable, nothing

more is required at the pleading stage.

**ARGUMENT**

I.    **THE "NATURAL FLAVOR" AND "ORGANIC" REGULATIONS DEFENDANT CITES ARE IRRELEVANT AND DO NOT PREEMPT PLAINTIFF'S CLAIMS.**

   Defendant discusses FDA regulations at length, citing an FDA regulation in support of its

claim that citric acid can qualify as "natural" in "certain" circumstances. It also cites the National

---

[1] The FDA's 10/6/21 Chiquita warning letter is apparently no longer available on the FDA's website. However, courts have taken judicial notice of it in other cases. *See, e.g.*, *Olmos v. T. Marzetti Co.*, 2022 WL 18358950, at *4 (C.D. Cal. Oct. 11, 2022) (citing 10/6/21 warning letter then available at https://www.fdalabelcompliance.com/letters/ucm228663); *Mason v. Reed's Inc.*, 515 F. Supp. 3d 135, 140 (S.D.N.Y. 2021) (citing "Ex. B" (2010 Chiquita warning letter)); *Simeone v. T. Marzetti Co.*, 2023 WL 2665444 (S.D.N.Y. Mar. 28, 2023) (citing 2010 Chiquita warning letter). The 8/29/01 Hirzel warning letter was Exhibit D in *Mason*. 515 F. Supp. 3d at 140.

Organics Program for the proposition that citric acid can be "nonsynthetic" for purposes of that program. Those regulations, however, would only be supportive of Defendant's motion to the extent they preempt Plaintiff's claims. As discussed below, they do not do that.

### A. The "natural flavor" and "organic" regulations do not authorize Defendant's claim of "no artificial preservatives."

Defendant begins with the proposition (at 10) that "Plaintiff's blunderbuss allegations based on general 'industry practice' could survive a motion to dismiss only if it were impossible for citric acid ever to qualify as natural." But Plaintiff makes no allegations based on general industry practice and does not ask the Court to infer what Defendant does based on "industry practice." She expressly alleges the concrete fact that Defendant adds manufactured citric acid powder to its dips.

### 1. The FDA's regulation governing use of "natural flavor" is irrelevant to Plaintiff's challenge of Defendant's use of "no artificial preservatives."

Defendant cites (at 10) 21 C.F.R. § 101.22(a)(3) for the proposition that "FDA regulations in fact provide that a 'natural' substance includes 'essence[s] or extractive[s]' 'derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, … or fermentation products thereof[.]'" But section 101.22(a)(3) does not define "natural" or "natural substance." It defines "natural *flavor* or natural *flavoring*." Section 101.22(a)(3) is irrelevant because this case is not about Defendant's use of flavors or use of the word "natural" or "natural flavor." Plaintiff's claims are about Defendant's false claim of no artificial *preservatives*.

### 2. The federal regulation of "organic" descriptors on food labels is irrelevant to Plaintiff's challenge of Defendant's use of "no artificial preservatives."

Defendant also cites the federal National Organic Program (NOP), which "is a federal regulatory program that develops and enforces consistent national standards for organically produced agricultural products." *See* https://www.ams.usda.gov/about-ams/programs-offices/

3

national-organic-program. The NOP regulates the labeling of products represented as "organic." 7 C.F.R. §§ 205.102, § 205.605. But Defendant made no claim on its labels that its dips were "organic," nor has it made any such claim before this Court. *See* Def. Ex. 1 (label exemplar). Even if the manufactured citric acid Defendant uses may theoretically qualify as "nonsynthetic" for purposes of the NOP—a claim which La Terra Fina notably has not made—that does not mean that they are not "artificial" for purposes of the state law claims at issue here. And because Defendant made no "organic" claim on the labels and neither party makes any kind of "organic" claim in this litigation, Defendant's discussion of the NOP is simply irrelevant.

3. **The "reasonable consumer" standard of state law governs—and here prohibits—Defendant's claim of "no artificial preservatives."**

Defendant has cited no federal law governing its use of its no-artificial-preservatives claim. State law does not expressly define the term either. For purposes of Plaintiff's claims, whether Defendant's claim of no artificial preservatives is false is a question governed by the reasonable consumer standard under state law. And whether that claim is false is an issue of fact the Court cannot decide at this pleading stage. *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 479 (7th Cir. 2020), ("whether a claim is either false or misleading is an issue of fact rather than law"; "It is not for the judge to determine, based solely upon his or her own intuitive reaction, whether the advertisement is deceptive."). Dismissal at this juncture is only appropriate when the claims are based on "unreasonable or fanciful interpretations of labels." *Id.* at 477. Whether Plaintiff's allegations pass muster under this standard—and they do—is discussed further as part of the sufficiency of those allegations under Rules 8 and 9(b), *infra* at 6-18. Here, it suffices to note that the reasonable consumer standard is the touchstone for measuring the sufficiency of Plaintiff's allegations, *not* the National Organic Program or 21 C.F.R. § 101.22(a)(3). And Defendant tellingly does not even challenge the reasonableness of Plaintiff's understanding of the label.

### 4.   Plaintiff's state law claims are not preempted.

La Terra Fina also makes a two-sentence claim of federal preemption in its red-herring discussion of federal regulations. Defendant first contends (at 12) that "to the extent Plaintiff's claim is premised on a claim that La Terra Fina's citric acid is artificial despite being made in a way that qualifies as 'natural' under FDA regulations or the NOP, her claim is preempted." But as just discussed, the two regulations Defendant cites pertain to "natural flavor" and "organic" claims. Neither addresses claims about artificial preservatives or a lack thereof.

Defendant also says (at 12), "Courts in this Circuit dismiss ICFA claims when they challenge representations authorized or mandated by federal law." But so what? Not even Defendant has dared to make the claim that federal law *mandated* it to make the "no artificial preservatives" claim. And Defendant has failed to make any (to borrow a term) *plausible* argument that a federal law somehow "authorized" it to make that claim.

The cases Defendant cites breathe no life into its preemption claim. The Food, Drug, and Cosmetic Act preempts "any requirement ... made in the label or labeling of food that is not identical to the requirement of section 343(r)." *Turek v. Gen. Mills, Inc.*, 662 F.3d 423, 426 (7th Cir. 2011). 21 U.S.C. § 343-1. So when a federal requirement "lists labeling disclosures that are affirmatively required, state law may not tack on further required disclosures that the federal standard does not mention." *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 484 (7th Cir. 2020). As Defendant itself notes, in *Turek*, "[t]he disclaimers that the *plaintiff wants added to the labeling* of the defendants' inulin-containing chewy bars *are not identical* to the labeling requirements imposed on such products by federal law, and so they are barred." And as *Bell* explains, there is a dispositive difference between trying to add something to a food label and challenging claims that producers voluntarily place on their labels. Any additions must be identical to federal requirements, but statements on labels that are not required by federal law can be prohibited by

state law. 982 F.3d at 484. (Defendant also cites *Gubala v. CVS Pharmacy, Inc.*, 2015 WL 3777627 (N.D. Ill. June 16, 2015), but that case represents a straightforward application of these principles.)[2] Ms. Vineyard does not seek to add anything to La Terra Fina's labels. She seeks to hold Defendant liable for the deceptive language that it voluntarily placed on its labels. *See also Simeone v. T. Marzetti Co.*, 2023 WL 2665444, at *8 (S.D.N.Y. Mar. 28, 2023) (challenge to "no preservatives" claim not preempted because plaintiffs did not seek "additional labelling").

## II. PLAINTIFF'S ALLEGATION THAT LA TERRA FINA USES MANUFACTURED CITRIC ACID IS A CONCRETE ALLEGATION OF FACT ENTITLED TO A PRESUMPTION OF TRUTH AT THE PLEADING STAGE.

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain enough factual content to 'state a claim to relief that is plausible on its face.'" *L. Offs. of David Freydin, P.C. v. Chamara*, 24 F.4th 1122, 1128 (7th Cir. 2022) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "In *Iqbal*, the Court emphasized that '[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.'" *Id.* at 1128-29. A court must "review the complaint in the light most favorable to plaintiffs and accept all well-pleaded facts as true." *Id.* at 1129. In a food label case, "claims survive if they have plausibly alleged that the defendants' front labels likely lead a significant portion of reasonable consumers to falsely believe something that the back labels belie." *Bell*, 982 F.3d at 476.

---

[2] Defendant also cite *Gouwens v. Target Corp.*, No. 3:22-cv-50016, 2022 WL 18027524, at *1 (N.D. Ill. Dec. 30, 2022) and *Fuchs v. Menard, Inc.*, 2017 WL 4339821, at *4 (N.D. Ill. Sept. 29, 2017), both of which are irrelevant. *Gouwens* was a no-artificial-flavors case. *Fuchs* involved a federal agency's interpretation of a label contrary to plaintiff's position.

### A. Plaintiff's allegations that Defendant adds an artificial preservative to its dips is both plausible and sufficient under Rule 8.

The elements of an ICFA claim are "(1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012). ICFA "require[s] plaintiffs to prove that the relevant labels are likely to deceive reasonable consumers, which requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Bell*, 982 F.3d at 474-75 (cleaned up). And the burden is on the moving party to prove that no legally cognizable claim for relief exists. *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021) (citing Charles Alan Wright & Arthur R. Miller, 5A *Federal Practice and Procedure* § 1357 (3d ed. 2019).

In the present case, Defendant's challenge is limited to the sufficiency of Ms. Vineyard's allegations that Defendant adds artificial preservative to its dips. Ms. Vineyard alleges that Defendant adds "food grade citric acid" to its dips that is "a commercially-manufactured, synthetically-produced, highly-processed food additive sold in the form of a white powder." ECF No. 1-1 (Complaint) at 8 ¶¶ 3-4. She also alleges that that form of citric acid "does not exist in nature." *Id*. at ¶ 5. This Court is obliged to accept those unambiguous factual allegations as true.

Plaintiff's allegations that the citric acid Defendant uses is an *artificial* preservative are also sufficient. As discussed, federal law does not define whether any given form of citric acid may be described as an "artificial" preservative. And because federal law does not set such a standard, states are free to define artificiality as a matter of state law. The applicable standard is the reasonable consumer standard: whether Defendant's label claim of no artificial preservatives is "likely to deceive reasonable consumers, which requires a probability that a significant portion of

7

the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Bell*, 982 F.3d at 474-75. That is a question of fact for a factfinder: whether Defendant's claim that the dips contain no artificial preservatives is misleading given that they contain a highly-processed, commercially-manufactured, white powder form of citric acid that does not exist in nature. As discussed, Plaintiff has adequately alleged that the citric acid Defendant uses is a preservative. She further alleges that Defendant uses citric acid "in the Dips to … slow or stop the discoloration or browning of the Dips and control the growth of microorganisms, i.e., Defendant adds the citric acid … as a preservative." ECF No. 1-1 (Complaint) at ¶ 4. Those allegations meet the FDA's definition of a "chemical preservative." 21 C.F.R. § 101.22(5) ("chemical preservative means any chemical that, when added to food, tends to prevent or retard deterioration thereof").

Whether Plaintiff has adequately alleged that the citric acid Defendant uses is "artificial" is an allegation measured by the reasonable consumer standard. The dictionary defines "artificial" as something that is "humanly contrived" or "man-made." *Artificial*, https://www.merriam-webster.com/dictionary/artificial; *Artificial*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("Made or produced by a human or human intervention rather than by nature"). So if the finder of fact finds, as Plaintiff alleges, that Defendant uses a highly-processed, commercially-manufactured, white powdered form of citric acid that does not exist in nature, the finder of fact could then conclude that a reasonable consumer would believe Defendant's citric acid is "artificial," and that its claim of no artificial preservatives is thus deceptive. For these reasons, Plaintiff's allegations that Defendant adds an artificial preservative to its dips is plausible and sufficient under Rule 8.

**B. Allegations do not need to be detailed to be "plausible."**

Defendant insists—incorrectly—that Plaintiff should be required to plead a detailed, factual basis for her allegation that Defendant adds artificial citric acid to its dips. It contends that

8

Plaintiff's allegation that it adds artificial citric acid to its dips is "conclusory." That rationale, however, not only ignores Plaintiff's more specific allegations, but it also belies a misunderstanding of both *Twombly* and *Iqbal*. In both cases, the Supreme Court explicitly reaffirmed that "the pleading standard Rule 8 announces does not require 'detailed factual allegations.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*). Defendant's contentions are not supported by Rule 8, *Twombly*, or *Iqbal*.

**1.   *Twombly* and *Iqbal* require inferences drawn in a complaint to be plausible.**

In *Twombly*, the Supreme Court was faced with allegations that the defendants had engaged in certain conduct that would constitute an antitrust violation if the defendants had agreed with each other to undertake that conduct but would have been lawful had the defendants acted in parallel but independently. The issue was whether an agreement could be inferred from the defendants' alleged "parallel conduct." The plaintiffs "allege[d] upon information and belief that [the defendants] have entered into a contract, combination or conspiracy," but that allegation was simply an inference drawn from the defendants' parallel conduct. 550 U.S. at 551. "An allegation of parallel conduct is thus much like a naked assertion of conspiracy in a § 1 complaint: it gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility of 'entitle[ment] to relief.'" *Id*. at 557.

> [W]ithout that further circumstance pointing toward a meeting of the minds, an account of a defendants' commercial efforts stays in neutral territory. An allegation of parallel conduct is thus much like a naked assertion of conspiracy in a § 1 complaint: it gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility of "entitle[ment] to relief."

*Id*.

*Twombly*'s "plausibility" gloss on Rule 8 is not about the relative *credibility* of allegations. 550 U.S. at 556 ("a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely'").

9

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678. Plausibility is a standard about logic: whether the inference the plaintiff asks a court to draw flows logically—*i.e.*, plausibly—from the well-pled factual allegations of the complaint. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Rule 8(a)(2)). In *Iqbal*, the plaintiff sued John Ashcroft and Robert Mueller, alleging "they adopted an unconstitutional policy that subjected respondent to harsh conditions of confinement on account of his race, religion, or national origin." 556 U.S. at 666. "To prevail on that theory, the complaint must contain facts plausibly showing that [Ashcroft and Mueller] purposefully adopted a policy of classifying post-September-11 detainees as 'of high interest' because of their race, religion, or national origin." *Id*. at 682. While the plaintiff alleged that other lower-level officials had engaged in such conduct, he failed to make such allegations against Ashcroft and Mueller. *Id*. at 682-83. Ashcroft and Mueller could not "be held liable unless they themselves acted on account of a constitutionally protected characteristic," which the plaintiff failed to allege. *Id*. at 683.

So *Twombly* and *Iqbal* teach that when ultimate, factual inferences of unlawful conduct must be drawn from other facts alleged in a complaint, the alleged facts must not be merely consistent with a defendant's liability but instead must permit a court to plausibly infer unlawful conduct. Merely parroting an element of a cause of action without alleging concrete facts that satisfy that element are "legal conclusions" and "conclusory statements" that "do not suffice."

10

## 2. *Tarzian* and cases like it are distinguishable.

Defendant cites *Tarzian v. Kraft Heinz Foods Co.*, WL 5064732 (N.D. Ill. Oct. 9, 2019), which also involved a claim that a defendant had falsely claimed its product contained "no artificial preservatives." *Id.* at *1 (N.D. Ill. Oct. 9, 2019). In *Tarzian*, the plaintiff did what Defendant incorrectly claims Plaintiff did here: allege a common industry practice and then ask the court to infer that the defendant acted in conformity with that practice. "Plaintiffs allege that Capri Sun contains industrially manufactured citric acid, and industrial citric acid is artificial because it is usually produced through the industrial fermentation process. *Id.* at *4 But the *Tarzian* plaintiffs never alleged what Kraft actually did, and the court found that an allegation of "usual" industry practice was insufficient: "That is too great of an inferential leap." *Id.* at *4.

By contrast, Plaintiff has not alleged anything about "industry practice." She has explicitly alleged that *La Terra Fina* "uses" and "adds" artificial, powdered citric acid to its dips. ECF No. 1-1 (Complaint) at ¶ 4. Ms. Vineyard's express allegations are what make the difference between this case and *Tarzian* (and the other cases Defendant cites (at 7 and in its citation of supplemental authority), "nudging" her claims across the line from an inference that La Terra Fina *possibly* uses artificial citric acid to an explicit allegation that La Terra Fina *does in fact* use artificial citric acid.

In *Noohi v. Kraft Heinz Co.*, 2020 WL 5554255 (C.D. Cal. July 20, 2020), Kraft made the same argument, but the court rejected it because the plaintiffs "allege[d] unequivocally that the Defendants do in fact use DL-Malic Acid," the preservative at issue there. *Id.* at *2; *accord Allred v. Kellogg Co.*, 2018 WL 1158885 (S.D. Cal. Feb. 23, 2018); *Marotto v. Kellogg Co.*, 2018 WL 10667923 (S.D.N.Y. Nov. 29, 2018); *see also Troncoso v. TGI Friday's Inc.*, 2020 WL 3051020, at *9 (S.D.N.Y. June 8, 2020) (label claim that product contained potato peels was sufficiently alleged to be deceptive because "Plaintiff has alleged that the snack chips do not contain potato peels"). As in *Noohi*, Ms. Vineyard has "unequivocally" alleged that La Terra Fina uses artificial

11

citric acid; she has not relied on an inference based on allegations about "industry practices." Her allegations are sufficient under Rule 8.

### C. Defendant's claim that Plaintiff must allege with detail that citric acid "functions" as a preservative in the dips is wrong.

La Terra Fina insists that Plaintiff must plausibly allege that citric acid "functions" as a preservative in the dips. But Defendant made a categorical claim that its dips contain "NO" artificial preservatives. Had Defendant claimed that the citric acid in its dips does not function as a preservative, then Plaintiff would probably agree that she would have needed to plead that citric acid "functions" as a preservative in the dips. But Defendant made an across-the-board, unconditional promise about the *absence* of preservatives irrespective of whether they function as preservatives in the dips. An iota of artificial preservative in the dips—even if in an insufficient quantity to function as a preservative—would constitute a breach of La Terra Fina's categorical promise of "NO" artificial preservatives.

In addition, Ms. Vineyard has also alleged factually that Defendant adds the citric acid "as a preservative." ECF No. 1-1 (Complaint) at ¶ 4. She also alleges that Defendant uses citric acid "in the Dips to … slow or stop the discoloration or browning of the Dips and control the growth of microorganisms"—in other words, Defendant uses it as a preservative to preserve natural color and microbial purity of the food. ECF No. 1-1 (Complaint) at ¶ 4. One of the very FDA regulations La Terra Fina relies on for one of its other arguments (*see* discussion of 21 C.F.R. § 101.22, *supra* at 3) defines "chemical preservative" to mean "any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties." 21 C.F.R. § 101.22(a)(5). Citric acid is beyond any legitimate dispute a "chemical preservative." That fact remains unchanged even

12

if La Terra Fina had some other purpose for using citric acid in its dips.  Citric acid's preservative properties do not switch on and off depending on the reasons a manufacturer chooses to add it to a food product.

This Court has addressed the issue in a slightly different context, but its reasoning is persuasive and applicable here. In *Vanlaningham v. Campbell Soup Co.*, 492 F. Supp. 3d 803 (S.D. Ill. 2020), the Court wrote that "a reasonable consumer, upon seeing 'no preservatives' might conceivably find that the language was an unambiguous representation that the contents did not contain the kinds of ingredients generally considered to be preservatives, *without regard for whether those ingredients were in fact functioning as preservatives.*" *Id*. at 809. (emphasis added). And while the Court was addressing a challenge to what a "reasonable consumer" might understand, the Court's conclusion applies with equal force here as well: "this line of argument is not so wholly implausible that the Court is prepared to grant a motion to dismiss on this basis." *Id*.; *see also Gouwens v. Target Corp.*, 2022 WL 18027524, at *1 (N.D. Ill. Dec. 30, 2022) (question of function of additive "cannot be decided at the pleading stage").

## III.  TO THE LIMITED EXTENT RULE 9(b) APPLIES, PLAINTIFF'S ICFA ALLEGATIONS SATISFY THE RULE'S PLEADING STANDARD.

La Terra Fina maintains (at 14-15) that the pleading standard of Rule 9(b) applies to Plaintiff's ICFA claims (Counts I and II for deception and unfairness) and that "[b]ecause Plaintiff's claim falls short of Rule 8's pleading standards, it necessarily fails Rule 9(b)'s." But Defendant glosses over a number of key points.

### A.  Rule 9(b)'s pleading standard does not apply to Plaintiff's nonfraud allegations.

By its plain terms, Rule 9(b) applies only to allegations of fraud or mistake. This is the reason that when "both fraudulent and nonfraudulent conduct violating the same statute or common law doctrine is alleged, only the first allegation can be dismissed under Rule 9(b)." *Appvion, Inc. Ret.*

13

*Sav. & Emp. Stock Ownership Plan ex rel. Lyon v. Buth*, 99 F.4th 928 (7th Cir. 2024) (quoting *Kennedy v. Venrock Assocs.*, 348 F.3d 584, 593 (7th Cir. 2003). "Thus, if a court thinks a plaintiff has failed to plead fraud, it must disregard averments of fraud not meeting Rule 9(b)'s standard and then ask whether a claim has been stated." *Id*. La Terra Fina ignores these basic principles.

In addition, the Illinois Consumer Fraud Act "allows a plaintiff to premise her claim on either deceptive conduct or unfair conduct (or both), but 'the two categories have different pleading standards.'" *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019).

> "If the claim rests on allegations of deceptive conduct, then [Federal Rule of Civil Procedure] 9(b) applies and the plaintiff must plead with particularity the circumstances constituting fraud." This means as a practical matter that she must identify the "who, what, when, where, and how" of the alleged fraud. On the other hand, Rule 9(b)'s heightened pleading standard does not apply to an allegation of unfair conduct, because fraud is not a required element under that branch of the statute.

*Id*.; *accord Womick v. Kroger Co.*, 2022 WL 673095, at *2 (S.D. Ill. Mar. 7, 2022). Rule 9(b) therefore does not apply to Plaintiff's ICFA unfairness claim, Count II.

And Defendant's argument that Plaintiff's ICFA claims necessarily fail Rule 9(b)'s pleading standard because they fail Rule 8's pleading standard ignores the factual bases of Defendant's Rule 8 argument: that Plaintiff supposedly failed to plausibly allege that La Terra Fina adds citric acid to its dips or that the citric acid functions as a preservative in the dips—nonfraud allegations. Rule 9(b) is inapplicable to those allegations.

### B.  Plaintiff's fraud allegations satisfy Rule 9(b)'s pleading standard.

Plaintiff's only claim "sounding in fraud" is Count I—deception under the ICFA. Rule 9(b)'s particularity requirement means "[a] plaintiff ordinarily must describe the 'who, what, when, where, and how" of the fraud—"the first paragraph of any newspaper story.'" *U.S. ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016). "In the context of the ICFA, this means that a plaintiff must identify 'the identity of the person making the

14

misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated.'" *Breeze v. Bayco Prod. Inc.*, 475 F. Supp. 3d 899, 906 (S.D. Ill. 2020).

"While applying this shorthand to describe the requirements of Rule 9, we also have warned that courts and litigants often erroneously take an overly rigid view of the formulation and that the precise details that must be included in a complaint may vary on the facts of a given case." *Presser*, 836 F.3d at 776. "[O]ne cannot focus exclusively on the fact that Rule 9(b) requires particularity in pleading the circumstances of fraud without taking account of the general simplicity and flexibility contemplated by the federal rules, as well as the strictures of plausibility pleading." WRIGHT & MILLER, 5A *Fed. Prac. & Proc. Civ.* § 1298 (4th ed.). In that same vein, while "Rule 9(b) requires specificity, … it does not insist that a plaintiff literally prove his case in the complaint." *United States v. Molina Healthcare of Ill., Inc.*, 17 F.4th 732, 741 (7th Cir. 2021). Just as Rule 8's "plausibility standard is not akin to a 'probability requirement,'" *Iqbal*, 556 U.S. at 678, Rule 9(b)'s pleading standard is not a probability standard, either.

Although it acknowledges (at 14) that Plaintiff's burden is to allege the who, what, when, where, and how of the fraud, La Terra Fina makes no attempt to show that Plaintiff has failed to carry that burden. Plaintiff identifies who made the misrepresentation; La Terra Fina did, but it has not challenged Plaintiff's allegation of the "who." Plaintiff identifies the time and place of the misrepresentation—on the label during the period when the label made the "no artificial" representations and the dips contained artificial citric acid, but again, Defendant has not challenged Plaintiff's allegation of the "when" or "where." Plaintiff alleges why Defendant's "no artificial preservatives" claim is false: because Defendant promises consumers "no artificial preservatives," even though it adds manufactured citric acid to its dips. ECF No. 1-1 (Complaint) at ¶ 4.

15

Unable to identify any missing allegations required by Rule 9(b), Defendant instead resorts to a different standard supposedly articulated in a lone out-of-circuit district court case. Defendant says "[t]o plead with particularity any mislabeling, Plaintiff must allege 'why the statements on the packaging of the … Products are false, how she learned they were false, [and] when she learned they were false." Def. Mem. at 14 (quoting *Arabian v. Organic Candy Factory*, 2018 WL 1406608, at *4 (C.D. Cal. Mar. 19, 2018)). In fact, La Terra Fina misreads *Arabian*.

*Arabian* involved a challenge to a manufacturer's gummy candies, which the plaintiff believed contained boysenberry, blackberry, and raspberry ingredients. *Id*. at *1. The front of the package contained several claims, including "a cubilicious mix of Boysenberry, Blackberry & Raspberry," *Id*. The back-label ingredients list did not include boysenberry, blackberry, or raspberry." *Id*. The plaintiff failed to allege any facts suggesting the gummy label was false in any respect.

> Plaintiff alleges that, "[s]ubsequent to her purchase, [Plaintiff] *learned about* the lack of Real Ingredients[3] in Gummy Cubs." These are the type of conclusory allegations that Rule 9(b) was designed to prohibit. Plaintiff does not adequately set forth why the statements on the packaging of the Class Products are false, how she learned they were false, or when she learned they were false. Stating that Plaintiff "learned about" why the packaging labels were false lacks the particularity that Rule 9(b) requires.

2018 WL 1406608, at *4 (emphasis in original; cleaned up).

Given that the plaintiff's sole allegation about the lack of "real ingredients" was that subsequent to her purchase she "learned about" the lack of real ingredients, it is hardly surprising that the court thought that allegations about how or when she "learned about" the lack of real ingredients might shed some light on Rule 9(b)'s "how" requirement: how the label was false. But La Terra Fina's claim notwithstanding, the court did not even remotely suggest that Rule 9(b) *requires* a plaintiff in a mislabeling case to "allege 'why the statements on the packaging of the …

---

[3] "Real Ingredients" was defined to mean boysenberry, blackberry, and raspberry ingredients. 2018 WL 1406608, at *1.

Products are false, how she learned they were false, [and] when she learned they were false." Indeed, the sole case the court cited after noting that the plaintiff had not alleged how or when she learned of the alleged falsity was *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047 (9th Cir. 2011). And, consistent with the law in this Circuit, *Cafasso* merely held that Rule 9(b) merely requires a pleader to "identify 'the who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent] statement, and why it is false.'" *Id*. at 1055.

Defendant also cites (at 14-15) *In re Bang Energy Drink Mktg. Litig.*, 2020 WL 4458916 (N.D. Cal. Feb. 6, 2020), a mislabeling suit that was dismissed because the "Plaintiffs do not allege any facts regarding the actual concentration of the challenged ingredients or the concentration that would be required to impart the benefits [defendant] advertises." *Id*. at *5. What Defendant fails to tell the Court, however, is that the concentration of the ingredients in *Bang Energy* was critical to the defendant's alleged label claims about the drink's "energy-boosting effects." 2020 WL 4458916, at *1. The plaintiffs alleged that the defendant (VPX) misrepresented "the contents and effects" of its drinks, specifically "that VPX incorrectly touts BANG® as containing 'Super Creatine,' 'Branched Chain Amino Acids,' and 'Ultra Coenzyme Q10' in quantities that, combined with caffeine, provide energy-boosting effects." 2020 WL 4458916, at *1. Judge Tigar found that while the plaintiffs had adequately alleged the what, who, when and where of the fraud, *id*. at *4, the plaintiff's allegations fell short "in articulating the 'how.'" *Id*.

The plaintiffs "allege[d] that [the drink] contains smaller quantities of three particular ingredients than VPX's representations suggest, and that one of these ingredients is not actually what VPX claims." *Id*. at *5. It was in this context—very different than the context of the present case—that the court held the allegations were insufficient because "Plaintiffs do not allege any

17

facts regarding the actual concentration of the challenged ingredients or the concentration that would be required to impart the benefits VPX advertises." *Id*. "Plaintiffs allege only that BANG® products contain none or mere 'trace amounts' of the challenged ingredients, and do not allege how much would be required to obtain the touted effects." *Id*.

Ms. Vineyard's allegations satisfy the "how" requirement: Defendant promised the absence of preservatives in its dips, but because the dips contain manufactured citric acid—an undisputed food preservative—its claim is false. Defendant's Rule 9(b) contentions should be rejected.

### C.  Plaintiff has sufficiently pled ICFA unfairness.

Defendant also contends (at 15) that Plaintiff's claim of ICFA unfairness "fails for the same reasons described above." Defendant cites *Jackson v. SFC Glob. Supply Chain, Inc.*, 2021 WL 3772696 (S.D. Ill. Aug. 25, 2021), with the parenthetical that this Court dismissed "ICFA unfair conduct claim because the plaintiffs 'ha[d] not plead[ed] additional facts showing that the labels were unfair for other reasons beyond their formulaic claims that the labels offend public policy and are immoral, unethical, and unscrupulous.'" While that is true as far as it goes, it is misleading.

*Jackson* involved two claims, a "preservative free" and a "no artificial flavors" claim. *Id*. at *1. The Court dismissed the unfairness artificial-flavors claim, which is the portion of the ruling Defendant cites. But the Court allowed the preservative-free claim to stand. *Id*. at *2 The Court dismissed the "no artificial flavors" claim because the plaintiffs had failed to plead sufficiently that it was false. *Id*. (citing 21 C.F.R. § 101.22). But the plaintiffs' allegations "that the pizzas contained sodium stearoyl lactylate, mono-and diglycerides, and enzymes," and "that mono- and diglycerides function as 'food-grade emulsifiers ... to create a softer crumb and extend the shelf life of breads and crusts by inhibiting or slowing down retrogradation'" and "that enzymes 'inhibit or slow retrogradation of the starches leading to 'dryness,' especially in breads and crusts'" were sufficient "to show that the pizzas contained ingredients that function solely as preservatives." *Id*.

18

The Court held that those allegations were a sufficient to support the preservative-free claim is false. And because "[f]alse advertising alone is an unfair practice under the ICFA," "Plaintiffs have stated a claim for unfair conduct under ICFA." *Id*. at *3.

Similarly here (and as discussed above), Ms. Vineyard has adequately pled that Defendant's claim of no artificial preservatives is false. That, in turn, means she has sufficiently pled a claim for ICFA unfairness.

## IV.   PLAINTIFF HAS SUFFICIENTLY PLED BREACH OF WARRANTY.

Defendant says (at 15) that Plaintiff has failed plausibly to plead breach of warranty, relying on "the reasons discussed at length in Section III.B." And for the same reasons Defendant's Section III.B arguments fail, they also fail with respect to the breach of warranty claim.

Defendant also moves to dismiss the breach of warranty claim because Plaintiff purchased the dips from a grocer "and therefore is not in privity with La Terra Fina," citing *Larry Trover Produce, Inc. v. Nutrien Ag Sols., Inc.*, 2022 WL 594863, at *4 (S.D. Ill. Feb. 28, 2022). But as the Court noted in that case, federal district courts in Illinois have recognized a "direct relationship exception" to the privity requirement, though the Court did not reach the issue. *Id*. at *4 n.3 & accompanying text. The Court did address the exception's applicability in *York v. Andalou Nats., Inc.*, 2016 WL 7157555 (S.D. Ill. Dec. 8, 2016). There the Court held that "if a manufacturer 'expressly warranted its goods to the ultimate consumers and this was the basis for the bargain and relied upon by plaintiffs.'" *Id*. at *3 (quoting *In re McDonald's French Fries Litig.*, 503 F.Supp.2d 953, 957 (N.D. Ill. 2007)). The plaintiff there alleged that Defendant's claim that its products were "natural" "became part of the basis of the bargain in which Plaintiffs purchased Defendant's products, that Plaintiffs relied on the affirmations when making their purchasing decisions, and that Plaintiffs suffered damages as a result." *Id*. at *4. The Court held that those allegations

19

"establish[ed] the exception for express warranties under Illinois law" and that the plaintiffs had therefore "sufficiently state[d] a claim for breach of express warranty." *Id.*

Ms. Vineyard has made the same allegations here that the plaintiff made in *Jackson*. ECF No. 1-1 (Complaint) at ¶¶ 74-78, 81. For the same reasons the Court refused to dismiss the plaintiff's breach of warranty claim in *York*, it should do so here, too.

## V.   PLAINTIFF HAS SUFFICIENTLY PLED UNJUST ENRICHMENT.

Last, Defendant contends (at 16) that Plaintiff's unjust enrichment claim fails for the same reasons it says her ICFA claims fail, including preemption. And for the same reasons Defendant's Section III.B arguments fail, they also fail with respect to the unjust enrichment claim.

Defendant also contends an unjust enrichment claim will only lie when a plaintiff has no remedy at law. It says because Plaintiff seeks an award of damages, a legal remedy, unjust enrichment cannot lie. That is wrong for two reasons. First, requesting an improper remedy is "not be fatal to a party's pleading if the statement of the claim indicates the pleader may be entitled to relief of some other type." WRIGHT & MILLER, 5 *Fed. Prac. & Proc. Civ.* § 1255 (4th ed.); *accord Bontkowski v. Smith*, 305 F.3d 757, 762 (7th Cir. 2002) (under Rule 54(c) party may obtain any relief to which it is entitled even if not requested). Second, the rules expressly permit pleading of alternative and inconsistent claims for relief. *York*, 2016 WL 7157555 at *3 ("it is permissible to pursue alternative theories at the pleading stage"); *see also* Rule 8(a)(3) (demand for relief may include relief in the alternative or different types of relief); Rule 8(d)(3) (party may state separate claims "regardless of consistency"); Rule 8(e) ("Pleadings must be construed so as to do justice"). Defendant's motion to dismiss Plaintiff's unjust enrichment claim should be denied.

### CONCLUSION

The Court should deny La Terra Fina's motion to dismiss. If the Court concludes that Plaintiff's allegations are deficient in any respect, she respectfully requests leave to amend.

20

By:    /s/ Robert L. King
          Robert L. King
          king@kinglaw.com
          The Law Office of Robert L. King
          9506 Olive Blvd., Suite 224
          St. Louis, Missouri 63132
          (314) 246-0702

          David C. Nelson
          dnelson@nelsonlawpc.com
          NELSON & NELSON, ATTORNEYS AT LAW, P.C.
          420 North High Street, P.O. Box Y
          Belleville, IL 62222
           (618) 277-4000

          Matthew H. Armstrong
          matt@mattarmstronglaw.com
          ARMSTRONG LAW FIRM LLC
          8816 Manchester Rd., No. 109
          St. Louis, MO 63144
          (314) 258-0212

          Stuart L. Cochran
          scochran@condontobin.com
          Condon Tobin Sladek Thornton Nerenberg, PLLC
          8080 Park Lane, Suite 700
          Dallas, Texas 75231
          (214) 265-3800

          *Attorneys for Plaintiff and the Putative Class*

## CERTIFICATE OF SERVICE

I hereby certify that on May 21, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which electronically delivered a copy of the same to all counsel of record.

                                        /s/ Robert L. King
                                        Robert L. King

21