IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

TRICIA VINEYARD,
individually and on behalf of all
others similarly situated,

        Plaintiff,

v.

LA TERRA FINA USA, LLC,

        Defendant.

Case No. 3:24-CV-00704-NJR

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Double-dipping used to be the worst offense in the party dip game. But Plaintiff Tricia Vineyard claims she was duped by a dip—or rather its lid. In a familiar type of suit, Vineyard alleges Defendant La Terra Fina USA, LLC ("La Terra Fina") coaxed her into buying an Everything But The Bagel Dip & Spread when the lid strongly marketed "NO ARTIFICIAL FLAVORS, COLORS OR PRESERVATIVES." To Vineyard's surprise, a closer look at the ingredient list revealed citric acid—a known preservative commonly used within the commercial context in a synthetic or artificial form.[1]

According to Vineyard, the dip's packaging aims to capitalize on consumers' desires to eat healthy, wholesome ingredients but misleads them into believing that the product contains no synthetic, artificial preservatives or flavor agents. (Doc. 5-1, ¶¶ 2, 24, 25). Apparently, the Everything But The Bagel variety is not the only offender. The

---

[1] The included facts are derived from Vineyard's state court class action complaint (Doc. 5-1), and the Court accepts them as true for the purposes of La Terra Fina's motion to dismiss.

complaint lists the following La Terra Fina dips that also contain citric acid and similar packaging: Artichoke & Jalapeno Dip & Spread, Cheesy Artichoke Dip & Spread, Chili Con Queso Dip, Greek Yogurt Spinach & Parmesan Dip & Spread, Greek Yogurt Spinach Artichoke & Parmesan Dip & Spread, Green Chile & Cheese Dip & Spread, Mexicali Dip & Spread, Spinach Artichoke & Parmesan Dip & Spread, and Sriracha Three Cheese Dip & Spread (collectively "the Dips"). (*Id.* at ¶ 1). As an example, the Everything But the Bagel Dip & Spread packaging appears below.[2]



Vineyard avers that the Dips contain food grade citric acid, which is a commercially manufactured, synthetically produced, and highly processed food additive sold in the form of a white powder. (*Id.* at ¶¶ 3-5). This powdered form of citric acid purportedly used by La Terra Fina does not occur naturally. (*Id.* at ¶ 5). Vineyard further

---

[2] Vineyard's complaint did not include images of the packaging, but La Terra Fina provided these images as an exhibit to its motion to dismiss. (Doc. 19, pp. 5-7). Throughout the complaint, Vineyard references the packaging, and it is central to her claims for deceptive consumer practices and breach of warranty. As such, the Court may consider these images on the motion to dismiss. *See Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998) (describing the narrow exception permitting courts to consider documents attached to a motion to dismiss if they are referred to in the complaint and are central to plaintiff's claim).

claims that La Terra Fina uses the unnatural citric acid to adjust flavor, mitigate or stop discoloration or browning of the Dips, and regulate growth of microorganisms in the Dips. (*Id.* at ¶ 4). Essentially, Vineyard accuses La Terra Fina of using the citric acid as a flavoring agent and as a preservative. (*Id.*). In her complaint, Vineyard also references FDA regulations that identify citric acid as a synthetic substance. (*Id.* at ¶ 6).

Due to its use of food grade, synthetic citric acid, Vineyard contends that La Terra Fina directly misleads and deceives customers as its packaging expressly represents that the Dips include no artificial flavors, colors or preservatives. (*Id.* at ¶¶ 7-9, 25-34). Reasonable customers, according to Vineyard, would interpret the labels to mean exactly what they say—the Dips lack any artificial, synthetic flavors or preservatives. (*Id.*). Given the promise on the lid, consumers pay an inflated price for a product inferior to their reasonable expectations. (*Id.* at ¶¶ 11-12, 31). Specifically, Vineyard paid $3.99 for the Everything But The Bagel Dip but alleges that if she knew the product contained artificial preservatives she would have paid less or avoided purchasing the dip altogether. (*Id.* at ¶ 14).

Vineyard filed this suit as a putative class action in Illinois state court in January 2024. (Doc. 5-1). La Terra Fina timely removed the action to this Court. (Doc. 5). Vineyard seeks to certify an Illinois class encompassing:

> All current Illinois citizens who purchased "la terra fina" brand Artichoke & Jalapeno Dip & Spread, Cheesy Artichoke Dip & Spread, Chili Con Queso Dip, Everything But The Bagel Dip & Spread, Greek Yogurt Spinach & Parmesan Dip & Spread, Greek Yogurt Spinach Artichoke & Parmesan Dip & Spread, Green Chile & Cheese Dip & Spread, Mexicali Dip & Spread, Spinach Artichoke & Parmesan Dip & Spread and/or Sriracha Three Cheese Dip & Spread for personal, family, or household purposes from the

five-year period prior to the filing of this Complaint up through the date of preliminary approval (the "Class Period").

(Doc. 5-1, ¶ 41). Her complaint includes claims for deceptive and unfair practices in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") (Counts I and II), breach of express warranty (Count III), and unjust enrichment (Count IV). (Doc. 5-1). For relief, Vineyard seeks statutory and compensatory damages, restitution, and costs and expenses.[3] (*Id.*).

La Terra Fina moves to dismiss the class action complaint for failure to state a claim. (Doc. 18). Vineyard filed a response in opposition (Doc. 32), and La Terra Fina filed a reply brief in support of its position. (Doc. 34). La Terra Fina filed supplemental authority after filing its motion. (Docs. 25; 25-1; 26). Vineyard also filed supplemental authority, to which La Terra Fina responded. (Docs. 35; 36).

## SUBJECT MATTER JURISDICTION

This case was removed from the Circuit Court for the Twentieth Judicial Circuit in St. Clair County, Illinois, pursuant to the Court's jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") and 28 U.S.C. § 1332(d). Under CAFA, federal courts have jurisdiction to hear a class action if the proposed class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million. *Sudholt v. Country Mut. Ins. Co.*, 83 F.4th 621, 625 (7th Cir. 2023) (citing 28 U.S.C. § 1332(d)(2), (d)(5)(B)).

---

[3] The complaint specifically states that Vineyard "is not seeking punitive damages or an award of treble damages under the ICFA." (Doc. 5-1, ¶ 18). But in the Prayer for Relief section, Vineyard asks the Court to "award statutory and punitive damages to [Vineyard] and the proposed Class." (*Id.* at Prayer for Relief, ¶ d). It is unclear what Vineyard seeks as to relief in the form of punitive or statutory damages.

Here, Vineyard is a citizen of Illinois, and she proposes a class of Illinois citizens. (Doc. 5, ¶¶ 3, 8-9). La Terra Fina is a limited liability company ("LLC") organized under the laws of Delaware with its principal place of business in California. (*Id.* at ¶¶ 2, 10-12). Typically, to determine the citizenship of an LLC, courts look at the citizenship of each of its members.[4] *See, e.g., Copeland v. Penske Logistics LLC,* 675 F.3d 1040, 1043 (7th Cir. 2012) ("a limited liability company's citizenship includes every state of which any unit holder is a citizen"); *see also Thomas v. Guardsmark, LLC,* 487 F.3d 531, 534 (7th Cir. 2007) (recognizing that the pleading must identify each member of the LLC and the citizenship of each of those members). But under CAFA, "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10). So, for the purpose of § 1332(d), an unincorporated entity is treated as a corporation for determining citizenship—it is a citizen of the state of its principal place of business and state of organization. *City of East St. Louis, Ill. v. Netflix, Inc.,* 83 F.4th 1066, 1070-71 (7th Cir. 2023). Thus, La Terra Fina is a citizen of California and Delaware, and the minimum diversity requirement for jurisdiction under CAFA is met.

As to the other jurisdictional requirements under CAFA, the Notice of Removal explains that the putative class consists of more than 100 members based on La Terra Fina's sales of its products in Illinois, and that the aggregate claims of the proposed class

---

[4] Even if this requirement applied to limited liability companies under CAFA, sifting through the many layers of La Terra Fina's members and ownership reveals that it would be a citizen of California, Delaware, New Hampshire, and Massachusetts—not Illinois. (Doc. 5-2).

plausibly exceed $5 million, exclusive of interest and costs. (Docs. 5, ¶¶ 14-27; 5-3). This Court, therefore, has subject matter jurisdiction over the action.

## LEGAL STANDARD

A court may dismiss a complaint for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). To survive a Rule 12(b)(6) motion, the plaintiff only needs to allege enough facts to state a claim to relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff need not plead detailed factual allegations, but must provide "more than labels and conclusions, and a formulaic recitation of the elements." *Id.* at 555.

The court also must accept the complaint's well-pleaded factual allegations and draws all reasonable inferences—but not legal conclusions—in the plaintiff's favor. *Burke v. 401 N. Wabash Venture, LLC,* 714 F.3d 501, 504 (7th Cir. 2013). Taken together, the factual allegations contained within a complaint must "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly,* 550 U.S. at 555 (internal citations omitted).

## DISCUSSION

La Terra Fina moves to dismiss Vineyard's complaint with prejudice for failure to state a claim. Its main criticism of the complaint is that Vineyard baldly asserts—without any supporting facts, knowledge, insight, or testing—that La Terra Fina uses artificially-produced citric acid as a preservative in its dip and spread products. (Doc. 18).

La Terra Fina characterizes this statement as an assumption, not a fact. (*Id.*). According to La Terra Fina, Vineyard's broad explanation of food-grade citric acid and its typical uses does not support the allegations that such citric acid is used in its products. (*Id.*). La Terra Fina also faults Vineyard for cherry-picking federal regulations that identify citric acid as a synthetic substance in her complaint, while ignoring others that recognize certain citric acid as natural or nonsynthetic. (*Id.*). In addition, La Terra Fina argues that Vineyard fails to allege that it uses citric acid solely as a preservative in its dips, when there are many other recognized uses for citric acid in food. (*Id.*).

In response, Vineyard contends that her allegation that La Terra Fina adds food-grade citric acid that is manufactured and synthetic to its Dips is a concrete factual allegation entitled to a presumption of truth at the pleading stage. (Doc. 32). Further, Vineyard characterizes this factual allegation as plausible and sufficient under the relevant federal pleading standards. (*Id.*). Vineyard urges that whether La Terra Fina's claim that the Dips contain no artificial preservatives misleads consumers is a question of fact for the factfinder. (*Id.*). Vineyard also argues that the actual function of the citric acid—whether La Terra Fina uses it as a preservative—does not matter, because a reasonable consumer could interpret the claim of "no artificial preservatives" to mean that the Dips lack any substance that could be used as a preservative. (*Id.*). As to the heightened pleading standard for allegations of fraud, Vineyard claims she easily meets those requirements in the limited extent that they apply. (*Id.*). As to the breach of warranty and unjust enrichment claims, Vineyard also stands by her allegations as sufficient as they follow suit with the ICFA claims. (*Id.*).

To address one point, the parties appear to talk past one another regarding federal regulations and federal preemption. In the Court's understanding, La Terra Fina references regulations regarding natural and organic products to dispel the notion that citric acid can *only* be synthetic (as Vineyard's allegations appear to endorse), not to argue those regulations govern how preservatives must be identified on food labels or packaging.

### A. Deceptive Acts or Unfair Practices Under the ICFA (Counts I and II)

The ICFA aims to shield consumers against unfair or deceptive acts or practices, including but not limited to the use of deception, fraud, false pretense, false promise, misrepresentation, or concealment, or the omission of any material fact. 815 ILCS § 505/2. To state a claim under the ICFA, a plaintiff must allege facts showing: "(1) that the defendant engaged in a deceptive or unfair practice; (2) with the intent that the plaintiff (or others) rely on the deception; (3) that the act occurred in the course of trade or commerce; and (4) that the deception caused actual damages." *Kahn v. Walmart Inc.*, 107 F.4th 585, 598 (7th Cir. 2024).

"[A] practice is deceptive if it creates a likelihood of deception or has the capacity to deceive." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019). Courts apply a "reasonable consumer" standard when evaluating whether a statement is deceptive or has the likelihood to deceive, which factors in the totality of the information available to the consumer at the point of deception. *Kahn*, 107 F.4th at 598. Under this standard, a plaintiff must show that "a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be

misled." *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 474–75 (7th Cir. 2020).

A plaintiff may allege that conduct is unfair without alleging that the conduct is deceptive. *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010). Illinois courts consider three factors to determine if a practice is unfair: whether it (1) offends public policy, (2) is immoral, unethical, oppressive, or unscrupulous, or (3) causes substantial injury to consumers. *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738-39 (7th Cir. 2019) (quoting *Batson v. Live Nation Entertainment, Inc.*, 746 F.3d 827, 830 (7th Cir. 2014)). "A court may find unfairness even if the claim does not satisfy all three criteria." *Siegel*, 612 F.3d at 935. Ultimately, courts perform a case-by-case analysis to determine whether a practice is unfair. *Id.*

"If the claim rests on allegations of deceptive conduct, then [Federal Rule of Civil Procedure] 9(b) applies and the plaintiff must plead with particularity the circumstances constituting fraud." *Vanzant*, 934 F.3d at 738. That is, the plaintiff must identify the "who, what, when, where, and how" of the alleged fraud. *Id.* For unfair conduct, Rule 9(b)'s heightened pleading standard does not apply. *Id.* at 739.

Many district courts across the nation have analyzed similar complaints challenging the use of citric acid as an artificial preservative in food products where the packaging displays claims related to a lack of artificial ingredients and/or preservatives. In its motion to dismiss, La Terra Fina relies on *Tarzian v. Kraft Heinz Foods Co.*, a case from the Northern District of Illinois. In *Tarzian*, plaintiffs challenged the labels of Capri Sun pouches that stated the beverage contained "no artificial preservatives," but the ingredient list included citric acid. *Tarzian v. Kraft Heinz Foods Co.*, No. 18-7148, 2019 WL

5064732, at *1 (N.D. Ill. Oct. 9, 2019). The district court in *Tarzian* found the allegations in the complaint insufficient as they detailed common industry practices used to manufacture a synthetic form of citric acid produced through *Aspergillus niger* fermentation and simply stated that Capri Sun contains industrially produced citric acid. *Id.* From there, plaintiffs concluded that defendant's citric acid was artificial, which the court held was too great an inferential leap. *Id.* at *4. Because plaintiffs failed to draw a nexus between the allegedly artificial citric acid and the actual citric acid used by defendants, the court dismissed the related counts for consumer fraud. *Id.*

To distinguish *Tarzian*, Vineyard argues that her allegations do not rely on industry standards to demonstrate that La Terra Fina used artificial ingredients in its products. Vineyard urges that her allegations are explicit and direct—La Terra Fina uses and adds artificial, powdered citric acid to its products. These express allegations make all the difference, according to Vineyard, and nudge her claims across the line from an inference that La Terra Fina possibly uses artificial citric acid to an explicit assertion that it does use artificial citric acid.

Along with *Tarzian*, La Terra Fina references several other district court orders that dismissed generalized allegations regarding industry practices or unsubstantiated statements that the relevant products contain the artificial version of an included ingredient. *See, e.g.*, *Jackson v. SFC Global Supply Chain, Inc.*, No. 20-1072, 2021 WL 3772696 (S.D. Ill. Aug. 25, 2021) (allegations failed to explain why certain commercially manufactured or highly processed ingredients included in a pizza were artificial); *Indiviglio v. B&G Foods, Inc.*, No. 22-9545, 2023 WL 9022866, at *4 (S.D.N.Y. Dec. 29, 2023)

(finding generalized statements about industry did not adequately allege the citric acid used in the product was industrially produced citric acid and not derived from fruit, and plaintiff offered no supporting factual allegations about the source or preparation of the citric acid used in the product); *Hawkins v. Coca-Cola Co.*, 654 F. Supp. 3d 290, 305–06 (S.D.N.Y. 2023) (bare, unsubstantiated allegations about the possibility that the product contained an artificial ingredient were a far cry from raising any factually substantiated allegations that the product contained an artificial version of the ingredient rather than a natural version); *Hoffman v. Kraft Heinz Foods Co.*, No. 22-397, 2023 WL 1824795, at *8 (S.D.N.Y. Feb. 7, 2023) (plaintiff plainly offered conclusory allegations about the possibility that the product contained artificial ingredient, without additional factual support, and relied on conclusory statements that defendant used artificial ingredient to alter or enhance taste).

In a similar fashion, Vineyard references several other district court decisions where the allegations of a defendant's use of an artificial form of an ingredient were sufficient. But these cases involved much more detailed allegations than Vineyard offers here. *See, e.g.*, *Noohi v. Kraft Heinz Co.*, No. 19-10658, 2020 WL 5554255, at *2-3 (C.D. Cal. July 20, 2020) (allegations sufficient where plaintiffs alleged all products at issue contained artificial ingredient with additional factual support that defendants intentionally used artificial version as it was likely cheaper or more accurately resembled natural flavors); *Allred v. Kellogg Co.*, No. 17-1354, 2018 WL 1158885, at *1-2 (S.D. Cal. Feb. 23, 2018) (plaintiff specified with great detail the distinction between the natural and artificial versions of the ingredients from how they are made to how they are

distinguished on a label and alleged which version defendant used); *Marotto v. Kellogg Co.*, No. 18-3545, 2018 WL 10667923, at *7 (S.D.N.Y. Nov. 29, 2018) (plaintiff sufficiently pleaded that defendant's ingredients were artificial when plaintiff specified in detail the chemical differences between natural and artificial forms of the ingredient and identified differences in their manufacture).

Both parties also provided supplemental authority. La Terra Fina submitted *Valencia v. Snapple Beverage Corp.*, a relatively recent case from the Southern District of New York. In *Valencia*, plaintiffs made generalized allegations about the production of citric acid, including that citric acid is made beginning with fermentation from the *Aspergillus niger* mold and recovered through numerous chemical reactions with synthetic mineral salts and reagents. *Valencia v. Snapple Beverage Corp.*, No. 23-1399, 2024 WL 1158476, at *5 (S.D.N.Y. Mar. 18, 2024). The court held that plaintiffs' allegations failed to draw a connection between the common industry practice and the actual practice used by defendant. *Id.* at *5-6. More strongly, the *Valencia* court assessed that "[a] reasonable consumer would not think that a compound found in nature is artificial even if it is produced in a different way than nature produces it, if the way it is produced is that it is derived from a natural product and does not contain anything synthetic." *Id.* at *6.

Vineyard points to *Hayes v. Kraft Heinz Company*, a recent case from the Northern District of Illinois, as supplemental authority. The *Hayes* court found that plaintiffs drew a sufficient connection between the industry practice of using artificial citric acid and defendant's practices because plaintiffs incorporated by reference several academic studies and articles describing the history of citric acid, and how the artificial variety

derived from *Aspergillus niger* has overtaken the natural variety in food production. *Hayes v. Kraft Heinz Co.*, No. 23-16596, 2024 WL 4766319, at *3 (N.D. Ill. Nov. 13, 2024). Plaintiffs successfully wove the references to the studies and historical information together with its allegations to provide enough factual support to raise plaintiffs' claims above the speculative level. *Id.*

From all the authority cited by both parties, one thing is clear to this Court—Vineyard's allegations fail to plausibly allege that La Terra Fina actually uses artificial citric acid in its Dips, and that such use renders its representations of "no artificial preservatives" deceptive to reasonable consumers. Sure, Vineyard does not entirely rely on "industry practice" like the plaintiffs in *Tarzian* to suggest that the Dips contain an artificial variety of citric acid. Vineyard relies on even less. The averments in the complaint lack a supportive factual basis of any kind to create a plausible claim that the Dips contain the artificial version of citric acid. Instead of connecting her claims through supportive facts like the plaintiffs in *Hayes*—the supplemental authority Vineyard herself advanced—she simply states that food grade citric acid is synthetic and artificial, and La Terra Fina uses it. But while Vineyard positions this as a factual assertion worthy of a presumption of truth, it is really an unsupported conclusion based on Vineyard's own broad-sweeping inferences.

The Court acknowledges that Vineyard directly alleges that the citric acid used by La Terra Fina is artificial. Indeed, Vineyard states that the Dips contain food grade citric acid, which is a commercially manufactured, synthetically produced, highly processed food additive sold in the form of a white powder that La Terra Fina uses in its Dips to

adjust flavor, slow or stop discoloration or browning, and control growth of microorganisms. Further, Vineyard asserts that food grade citric acid in the powdered form used by La Terra Fina does not exist in nature.[5] But, while courts generally accept all well-pleaded facts as true and construe them in favor of the plaintiff, courts are not obliged to accept as true *unsupported conclusions of fact* or legal conclusions. *Hickey v. O'Bannon*, 287 F.3d 656, 657-58 (7th Cir. 2002); *see also Zablocki v. Merchs. Credit Guide Co.*, 968 F.3d 620, 623 (7th Cir. 2020) (courts need not accept as true statements of law or unsupported conclusory factual allegations); *Midwest Orthodontic Assocs., Ltd. v. Cincinnati Cas. Co.*, 564 F. Supp. 3d 663, 668 (S.D. Ill. 2021) ("Well-pleaded facts, however, include neither legal conclusions nor unsupported conclusions of fact.").

Looking at the complaint as a whole, Vineyard claims the citric acid used by La Terra Fina is artificial simply because the Dips are commercial food products, which use "food grade" citric acid that is synthetic and does not occur in nature. It is pure speculation to conclude, without more, that because the ingredient list mentions citric acid and the Dips are commercially produced and sold that the variety of citric acid used by La Terra Fina is synthetic or artificial. Vineyard's factual allegations related to the type of citric acid used in La Terra Fina's products are wholly unsupported and conclusory. Vineyard offers no additional factual allegations about the source or preparation of citric

---

[5] To the extent that the allegations in the complaint are presented without any reasonable *evidentiary* basis, that likely implicates an issue under Federal Rule of Civil Procedure 11, not Rule 12. *See* FED. R. CIV. P. 11 ("By presenting to the court a pleading…an attorney…certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, it is not being presented for any improper purpose" and "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.").

acid as an ingredient in the Dips, or even how it is unnatural. She also offers no supporting allegations about the difference between artificial and natural citric acid, like the many complaints evaluated in the cases cited by both parties. Instead, she blankly states that food grade citric acid is manufactured, synthetic, and processed, and La Terra Fina uses such citric acid in its Dips for various purposes.

Of course, Vineyard need not submit *evidence* at this stage, like product analysis or testing—though that would strengthen her assertions—but her allegations must have some reasonable support to raise her claim above the speculative level into the realm of plausibility. Even the cases Vineyard references in support of her allegations demonstrate that more is needed than the purely speculative, conclusory allegations housed in her complaint. This is especially important considering the heightened pleading requirements imposed on claims for deceptive consumer practices and fraud (i.e., the who, what, when, where, and how of the alleged fraud). Vineyard must provide more support to her empty assertions that, because La Terra Fina uses food grade citric acid, it uses a variety that does not occur in nature.

Without a sufficient allegation that La Terra Fina uses artificial citric acid, there is no plausible inference that consumers were deceived by a label that claimed the Dips had "no artificial flavors, colors or preservatives." As such, her claims of deception under the ICFA fail. Vineyard's claim of unfairness under the ICFA relies on the same allegations related to the type of citric acid used in the Dips. Thus, her allegations are equally insufficient to state a claim for unfair practices.

## B. Breach of Express Warranty (Count III)

Under Illinois law, to substantiate a claim for breach of express warranty, a plaintiff must allege that the defendant: "(1) made an affirmation of fact or promise; (2) relating to the goods; (3) which was part of the basis for the bargain; and (4) guaranteed that the goods would conform to the affirmation or promise." *O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 714 (N.D. Ill. 2020). "Generally, a plaintiff must state the terms of the warranty alleged to be breached or attach it to the complaint." *Rudy v. Family Dollar Stores, Inc.*, 583 F. Supp. 3d 1149, 1162 (N.D. Ill. 2022) (internal quotation marks omitted).

Because her breach of express warranty claims rest on the same deficient allegations related to La Terra Fina's use of artificial citric acid, Vineyard similarly fails to state a claim as to Count III. To show that La Terra Fina breached its express warranty that the Dips contain no artificial flavors, colors or preservatives, Vineyard must provide factual allegations that substantiate her claim that the Dips contain artificial citric acid.

## C. Unjust Enrichment (Count IV)

Illinois law recognizes unjust enrichment as an independent cause of action. *Cleary v. Philip Morris, Inc.*, 656 F.3d 511, 516 (7th Cir. 2011). If such a claim rests on the same improper conduct alleged in another claim, the unjust enrichment claim, tied to the related claim, will stand or fall with it. *Id.* at 517. Here, Vineyard's unjust enrichment claim rests on her ICFA claims, which, as explained above, she failed to sufficiently plead. Accordingly, Vineyard's unjust enrichment claim is dismissed along with those related claims.

CONCLUSION

For these reasons, the Court **GRANTS** the Motion to Dismiss Plaintiff's Class Action Complaint For Failure to State a Claim (Doc. 18) filed by Defendant La Terra Fina. Plaintiff Tricia Vineyard's complaint is **DISMISSED without prejudice**. If she wishes to amend the allegations in her complaint in accordance with this Order, Vineyard shall file an amended complaint on or before **April 21, 2025.** Failure to file an amended complaint will result in the dismissal of this action.

**IT IS SO ORDERED.**

DATED:   March 31, 2025

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**