**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ILLINOIS**

|  |  |
|---|---|
| TRICIA VINEYARD, individually and on behalf of all other similarly- situated current citizens of Illinois and the United States,<br><br>        Plaintiffs,<br><br>v.<br><br>LA TERRA FINA USA, LLC,<br><br>        Defendant. | Case No. 3:24-cv-00704-NJR |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
<u>DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>**

| | |
|---|---|
| Matthew H. Armstrong<br>matt@mattarmstronglaw.com<br>ARMSTRONG LAW FIRM LLC<br>8816 Manchester Rd., No. 109<br>St. Louis, MO 63144<br>(314) 258-0212 | Robert L. King<br>king@kinglaw.com<br>The Law Office of Robert L. King<br>9506 Olive Blvd., Suite 224<br>St. Louis, Missouri 63132<br>(314) 246-0702 |
| David C. Nelson<br>dnelson@nelsonlawpc.com<br>NELSON & NELSON, P.C.<br>420 North High Street<br>P.O. Box Y<br>Belleville, IL 62222<br>(618) 277-4000 | Stuart L. Cochran<br>scochran@condontobin.com<br>CONDON TOBIN SLADEK<br>THORNTON NERENBERG, PLLC<br>8080 Park Lane, Suite 700<br>Dallas, Texas 75231<br>(214) 265-3800 |

*Attorneys for Plaintiff and the Putative Class*

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1

ARGUMENT .................................................................................................................................. 1

I.     PLAINTIFF HAS PLED "FACTUAL CONTENT THAT ALLOWS THE COURT TO DRAW THE REASONABLE INFERENCE THAT THE DEFENDANT" MORE LIKELY THAN NOT ENGAGED IN "THE MISCONDUCT ALLEGED." ........................ 1

    A.  Plaintiff has adequately alleged that La Terra Fina more likely than not uses manufactured—in other words, "artificial"—citric acid in its Dips. .................................... 2

    B.  Plaintiff has adequately alleged that manufactured citric acid is "artificial." ..................... 4

    C.  Plaintiff has adequately alleged that citric acid is a "preservative," regardless of a manufacturer's reason for adding it to a food product. ........................................................ 5

    D.  Factual allegations that, taken as true, would permit a finder of fact to conclude La Terra Fina more likely than not uses artificial citric acid are sufficient. ............................. 7

    E.  *Tarzian* and cases like it are distinguishable. ...................................................................... 10

II.    THE "NATURAL FLAVOR" AND "ORGANIC" REGULATIONS DEFENDANT CITES ARE IRRELEVANT AND DO NOT PREEMPT PLAINTIFF'S CLAIMS. ............ 11

    A.  Federal regulation of "natural flavor" descriptors is irrelevant to Plaintiff's claim that Defendant's "no artificial preservatives" claim is deceptive under the ICFA. ................... 13

    B.  The federal regulation of "organic" descriptors is irrelevant to Defendant's deceptive claim of "no artificial preservatives." .................................................................................. 15

    C.  "OMRI" is an international nonprofit organization; it is not an agency of the government; it is not overseen by the government. It is not the government. ..................... 15

    D.  Plaintiff's state law claims are not preempted. .................................................................. 17

III.   TO THE LIMITED EXTENT RULE 9(b) APPLIES, PLAINTIFF'S ICFA ALLEGATIONS SATISFY THE RULE'S PLEADING STANDARD. ............................. 18

    A.  Rule 9(b)'s pleading standard does not apply to Plaintiff's nonfraud allegations. ............. 18

    B.  Plaintiff's fraud allegations satisfy Rule 9(b)'s pleading standard. ................................... 19

    C.  Plaintiff has sufficiently pled ICFA unfairness. ................................................................ 21

    D.  Plaintiff has standing to assert and sufficiently pled claims on behalf of non-Illinois class members. ................................................................................................................. 22

IV. PLAINTIFF HAS SUFFICIENTLY PLED BREACH OF WARRANTY AND UNJUST ENRICHMENT. ...................................................................................... 24

CONCLUSION .................................................................................................................... 25

## INTRODUCTION

Given the Court's March 31, 2025 dismissal and current posture of this case, familiarity with the general nature of Plaintiff's allegations is assumed. For the reasons discussed below, La Terra Fina's motion to dismiss should be denied.

## ARGUMENT

I. **PLAINTIFF HAS PLED "FACTUAL CONTENT THAT ALLOWS THE COURT TO DRAW THE REASONABLE INFERENCE THAT THE DEFENDANT" MORE LIKELY THAN NOT ENGAGED IN "THE MISCONDUCT ALLEGED."**

As the Court has noted, "the plaintiff only needs to allege enough facts to state a claim to relief that is plausible on its face" and "need not plead detailed factual allegations." 3/31/25 Order at 6 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The court also must accept the complaint's well-pleaded factual allegations and draws all reasonable inferences—but not legal conclusions—in the plaintiff's favor." *Id*. Ultimately, "the factual allegations contained within a complaint must 'raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" *Id*. (quoting *Twombly*).

Under *Twombly*'s plausibility standard, "[a] claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *L. Offs. of David Freydin, P.C. v. Chamara*, 24 F.4th 1122, 1128 (7th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). As the Seventh Circuit noted, the Supreme Court's decisions in *Twombly* and *Iqbal* did not ratchet up the pleading standard to something akin to a probability requirement. *Id*. at 1128-29 ("In *Iqbal*, the Court emphasized that '[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully'").

This Court found Plaintiff's explicit allegation that La Terra Fina uses synthetic citric acid in its dips inadequate because "[t]he averments in the complaint lack a supportive factual basis of

1

any kind to create a plausible claim that the Dips contain the artificial version of citric acid." 3/31/25 Order at 13. The Court specifically ruled that Vineyard's allegations were silent "about the source or preparation of citric acid as an ingredient in the Dips," "how it is unnatural," or "the difference between artificial and natural citric acid." *Id*. at 14-15. The Court was also careful to note that "[o]f course, Vineyard need not submit *evidence* at this stage … but her allegations must have some reasonable support to raise her claim above the speculative level into the realm of plausibility." 3/31/25 Order at 15.

### A. Plaintiff has adequately alleged that La Terra Fina more likely than not uses manufactured—in other words, "artificial"—citric acid in its Dips.

The primary difference between Ms. Vineyard's original state-court complaint and her first amended complaint is that the facts she alleges—which must be taken as true—mean that it is not just more likely than not that La Terra Fina uses artificial citric acid in its Dips, but that it is a virtual certainty it does so. That is much greater plausibility than the federal rules require. As noted, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Chamara*, 24 F.4th at 1128 (quoting *Iqbal*).

Specifically, Ms. Vineyard alleges on information and belief" (FAC ¶ 35) that La Terra Fina uses manufactured citric acid due to "[e]conomic, practical and technical reasons." *Id*. ¶ 36. Indeed, for many years, "99% of the world's citric acid has been produced via the fermentation process." *Id*. ¶ 38. The reason is that the global demand for citric acid "far exceeds" (FAC ¶ 37) the global capacity to produce it "naturally." Indeed, "global lemon/lime production would need to increase dramatically just to meet citric acid demand, assuming 100% of citrus were used for acid extraction. That assumption is unrealistic because of the many other essential uses (e.g., food, juice, essential oils) existing production levels currently supply." *Id*. ¶ 38.

2

"By contrast, fermentation-based production is significantly more cost-effective which is why it has for years supplied 99% of global citric acid. Seventy percent of that production is consumed by the food industry." *Id*. ¶ 39. For starters, "[c]itrus fruits only contain 4-8% citric acid by weight in their juice. To produce one kilogram of citric acid would require hundreds of lemons. The high demand for citric acid far exceeds the available supply from citrus fruits." *Id*. ¶ 37. The industrial process is far more economical for at least four reasons: unlike the extraction process from citrus fruits, "1) microbial fermentation can be performed year-round anywhere in the world." *Id*. ¶ 40.

Second, unlike a citrus grove in a tropical climate, requiring large tracts of real estate, irrigation, fertilizers, pesticides, and farm workers, "the input materials and chemicals for production are cheap" using a fermentation process. *Id*. "[F]ermentation processes are comparatively easy to scale up in industrial bioreactors, allowing for consistent, year-round production regardless of seasonal variations. Citrus extraction is limited by the seasonal and geographical availability of citrus fruits, making it less reliable for continuous large-scale production." *Id*. at ¶ 41.

Third, running a massive lemon or lime orchard is quite obviously labor intensive. By contrast, the industrial fermentation process is performed in "bioreactors," and "production in bioreactors is not labor intensive." *Id*. All of which is to say, that "the relative operating costs are significantly lower" for fermentation than extraction from lemons and limes. *Id*. ¶ 40. Given the foregoing facts, it is little wonder that "essentially all citric acid used in the food industry is produced through fermentation process." *Id*. ¶ 42. From which it follows "strictly as a statistical matter, [that] it is far more likely than not that Defendant uses manufactured citric acid in its Dips (and Defendant has not denied that it does so)." *Id*. ¶ 43. The facts Ms. Vineyard has alleged provide "a supportive factual basis … to create a plausible claim that the Dips contain the artificial version of citric acid" (*see* 3/31/25 Order at 13) which the Court found to be missing in Plaintiff's initial complaint.

3

Unlike other plaintiffs in some other cases, Plaintiff has not cited sources for the foregoing facts. But as the Court noted in its earlier ruling, "Vineyard need not submit *evidence* at this stage." 3/31/25 Order at 15. Plaintiff's factual allegations are thus sufficient without such citations. In addition, the federal rules foreclose any source-citation requirement: "Each allegation must be simple, concise, and direct. No technical form is required." Fed. R. Civ. P. 8(d)(1). Viewed fairly and objectively, Ms. Vineyard's allegations if taken as true are *at least* sufficient "to raise her claim above the speculative level into the realm of plausibility."

**B.  Plaintiff has adequately alleged that manufactured citric acid is "artificial."**

The first definition the Merriam Webster dictionary offers for "artificial" is "made, produced, or done by humans especially to seem like something natural : MAN-MADE." *See* https://www.merriam-webster.com/dictionary/artificial. A human-manufactured product is, by definition, "artificial." Citric acid derived through fermentation is made or produced by humans to seem like something natural.

Although La Terra Fina has not used the term "natural" on the labels at issue, it does contend (at 18)[1] that regulatory treatment of the use of the term "natural" is relevant to the question of what is "artificial." Merriam Webster defines "natural" as used in the present context as "growing without human care," "not cultivated," "existing in or produced by nature: not artificial." *See* https://www.merriam-webster.com/dictionary/natural. The Oxford English Dictionary defines "natural" as "[i]nvolving no artificial or man-made ingredients, chemicals, etc.; ecological, organic; *spec.* (of food and drink) containing no artificial colourings, flavourings, or preservatives." *See* https://www.oed.com/dictionary/natural_adj?tab=meaning_and_use - 35405502. And as Plaintiff has alleged, ninety-nine percent of all citric acid produced and used in the world

---

[1] For the sake of clarity, Plaintiff cites to the ECF pagination of Defendant's memorandum instead of the bottom-page pagination, which differs.

4

is manufactured through a fermentation process in bioreactors. That kind of industrially manufactured citric acid does not exist in nature "without human care"; it is cultivated. It does not exist in and is not produced by nature. It is a "man-made ingredient." It "involves … chemicals." In short, manufactured citric acid is not "natural" because it is "artificial" as those terms are commonly used. Plaintiff has thus plausibly alleged that La Terra Fina's Dips are "artificial" because they are not "natural," they are human-made.

### C.  Plaintiff has adequately alleged that citric acid is a "preservative," regardless of a manufacturer's reason for adding it to a food product.

La Terra Fina insists that Plaintiff must plausibly allege that citric acid "functions" as a preservative in the dips. But Defendant made a categorical claim that its dips contain "NO" artificial preservatives. Had Defendant claimed that the citric acid in its dips does not function as a preservative, then Plaintiff would probably agree that she would have needed to plead that citric acid "functions" as a preservative in the dips. But Defendant made an across-the-board, unconditional promise about the *absence* of preservatives irrespective of whether they function as preservatives in the dips. An iota of artificial preservative in the dips—even if in an insufficient quantity to function as a preservative—would constitute a breach of La Terra Fina's categorical promise of "NO" artificial preservatives.

In addition, Ms. Vineyard has also alleged factually that citric acid is "a well-documented and widely recognized food preservative." ECF No. 42 (First Amended Complaint) at ¶ 20; *see generally* ¶¶ 19-31. "Citric acid's effects include the delaying spoilage from bacteria, mold, fungi, and yeast, delaying changes in color, flavor, texture, and delaying browning and rancidity over the shelf-life of a food or beverage product." *Id*. at ¶ 21. The FDA defines "chemical preservative" to mean "any chemical that, when added to food, tends to prevent or retard deterioration thereof" and "expressly classifies citric acid as a preservative." *Id*. at ¶¶ 22, 25.

5

Plaintiff also alleges that "[c]itric acid is the most commonly used acidulant in the industry" and that it is used both "as a flavoring and preservative." *Id*. at ¶ 26. "The buffering properties of citrates are used to control pH and flavor." *Id*. Citric acid "is an antimicrobial. It kills microbes directly by penetrating the cell walls of the microorganisms." *Id*. at ¶ 27. It "also acts as a sequestrant … to slow the degradation of food and beverages." *Id*. at ¶ 28. It "functions as an antioxidant by sequestering metal ions (chelation), which prevents food deterioration and retards microbial growth." *Id*. at ¶ 29.

Plaintiff further alleges that "[w]hile citric acid can also be used to impart taste, a greater quantity is required to impart taste than to preserve. The preservative effects of citric acid are present even at lower levels." *Id*. at ¶ 30. So whatever La Terra Fina's reason for using citric acid in the Dips may be, it also "prevents (a) spoilage from bacteria, mold, fungi, and yeast; (b) changes in flavor, color, or texture; (c) browning; and (d) rancidity, over the shelf-life of the Dips." *Id*. at ¶ 31.

One of the very FDA regulations on which La Terra Fina relies for one of its other arguments (*see* discussion of 21 C.F.R. § 101.22, *infra* at 13-15) defines "chemical preservative" to mean "any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties." 21 C.F.R. § 101.22(a)(5). Citric acid is beyond any legitimate dispute a "chemical preservative." That fact remains unchanged even if La Terra Fina had some other purpose for using citric acid in its dips. Citric acid's preservative properties do not switch on and off depending on the reasons a manufacturer chooses to add it to a food product.

6

This Court has addressed the issue in a slightly different context, but its reasoning is persuasive and applicable here. In *Vanlaningham v. Campbell Soup Co.*, 492 F. Supp. 3d 803 (S.D. Ill. 2020), the Court wrote that "a reasonable consumer, upon seeing 'no preservatives' might conceivably find that the language was an unambiguous representation that the contents did not contain the kinds of ingredients generally considered to be preservatives, *without regard for whether those ingredients were in fact functioning as preservatives.*" *Id*. at 809. (emphasis added). And while the Court was addressing a challenge to what a "reasonable consumer" might understand, the Court's conclusion applies with equal force here as well: "this line of argument is not so wholly implausible that the Court is prepared to grant a motion to dismiss on this basis." *Id*.; *see also Gouwens v. Target Corp.*, 2022 WL 18027524, at *1 (N.D. Ill. Dec. 30, 2022) (question of function of additive "cannot be decided at the pleading stage").

### D. Factual allegations that, taken as true, would permit a finder of fact to conclude La Terra Fina more likely than not uses artificial citric acid are sufficient.

La Terra Fina does not dispute that Ms. Vineyard has alleged facts that, taken as true, would permit a finder of fact to conclude that Defendant more likely than not uses artificial citric acid in its Dips. Instead, it contends (at 15) that "courts consistently reject such probability-based arguments"—but as even La Terra Fina itself describes that case, "*Tarzian* [was] dismissed despite allegations that citric acid is 'usually' produced artificially." That allegation, however, is not the same as alleging facts, which if true, would have meant the defendant more likely than not used manufactured, artificial citric acid. Ms. Vineyard has done the latter, and she cannot be required to plead to a higher level of certainty than her ultimate burden of proof under the Illinois Consumer Fraud Act (ICFA)—a preponderance of the evidence, more likely than not. *Frank P. v. New York Life Ins. Co.*, 2005 WL 8179400, at *1 (N.D. Ill. June 6, 2005) ("The plaintiff's burden of proof under ICFA is a preponderance of the evidence"; collecting cases).

7

Defendant also contends (at 15) that Plaintiff's allegations are insufficient because "each is merely an inference the Plaintiff wants the Court to draw—not a 'factually substantiated allegation.'" But "[t]he court … must accept the complaint's well-pleaded factual allegations and draw[] all reasonable inferences … in the plaintiff's favor." 3/31/25 Order at 6 (quoting *Twombly*, 550 U.S. at 570). *Twombly* and *Iqbal* did not establish a heightened pleading standard—requiring greater pleading certainty than the plaintiff's burden of proof on the merits at trial—like Defendant advocates. Instead, they require more than a "sheer possibility," and Plaintiff's allegations satisfy that plausibility standard.

Indeed, the application of the kind of heightened pleading certainty that Defendant advocates would violate Plaintiff's seventh amendment right to a jury determination of Defendant's liability. As judges in this District and throughout the Seventh Circuit have long recognized, "there is a right to a jury trial on an ICFA claim in federal court." *Kremers v. The Coca-Cola Co.*, 714 F. Supp. 2d 912, 917 (S.D. Ill. 2009) (collecting "a number of thoughtful opinions from sister federal trial courts in this Circuit"). Given that a jury would be entitled to find La Terra Fina liable under ICFA if Plaintiff proved that it more likely than not used manufactured citric acid in its Dips, it would make no sense to require her to *plead* to a greater degree of certainty than she must *prove*. And if Plaintiff presented evidence to the jury of the allegations in her complaint (for example, about the source of 99% of all citric acid globally and the reasons food manufacturers like Defendant do not use citric acid derived from citrus fruit, etc.) the jury would be entitled to find that more likely than not La Terra Fina used manufactured citric acid in its Dips. To require more of Ms. Vineyard at the pleading stage would violate her seventh amendment right to a jury determination of that issue.

Whether Plaintiff's allegations are plausible is a question of whether the things she alleged "*could* … have happened, not *did* they happen. For cases governed only by Rule 8, it is not

8

necessary to stack up inferences side by side and allow the case to go forward only if the plaintiff's inferences seem more compelling than the opposing inferences." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) (emphasis in original). The suggestion that "plaintiffs must negate any and all potentially innocent explanations for the defendant's challenged conduct … one might conclude[] [is] inconsistent with the right to jury trial." 5 *Fed. Prac. & Proc. Civ.* § 1216 (4th ed.). Moreover, applying the kind of heightened pleading standard Defendant advocates would make it "almost impossible to bring" "certain types of cases …, as all of the information necessary to state a plausible claim is owned or known by the defendants and not accessible to the plaintiffs until the discovery phase." *Id*. This is such a case. Ms. Vineyard does not have inside information about the kind of citric acid La Terra Fina uses in its Dips. La Terra Fina knows what it uses but instead of sharing that information with the Court—or with Plaintiff's counsel when they advised they were about to file suit—it rests on its right to attack Plaintiff's pleading.

The Seventh Circuit has previously rejected the kind of heightened pleading Defendant demands here. In *U.S. ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849 (7th Cir. 2009), the relator brought a False Claims Act case against Rolls-Royce alleging that Rolls had falsely certified its completion of work as compliant with all legal requirements, something it had to certify in order to be paid. The relator, a Rolls-Royce employee, based the suit on his knowledge that the work was not compliant, but Rolls-Royce challenged the sufficiency of his pleading that Rolls had falsely certified that the work was compliant. Rolls-Royce demanded specific allegations about "the specific request for payment." *Id*. at 854. But "Lusby ha[d] not seen any of the invoices and representations that Rolls–Royce submitted." *Id*.

> He knows about shipments and payments, but he does not have access to the paperwork. The district court held that, unless Lusby has at least one of Rolls-Royce's billing packages, he lacks the required particularity. Since a relator is unlikely to have those

9

documents unless he works in the defendant's accounting department, the district court's ruling takes a big bite out of qui tam litigation.

*Id*. The court conceded that it was "essential" for the relator to plead a false statement, but it did not "think it essential for a relator to produce the invoices (and accompanying representations) at the outset of the suit. … But much knowledge is inferential—people are convicted beyond a reasonable doubt of conspiracy without a written contract to commit a future crime—and the inference that Lusby proposes is a plausible one," and that was sufficient.

So too here. Ms. Vineyard has provided a sufficient inferential basis at this stage, assuming her factual allegations to be true, for the Court to conclude that La Terra Fina more likely than not uses manufactured citric acid in its Dips and is therefore liable for falsely claiming those Dips to be free of artificial preservatives.

### E. *Tarzian* and cases like it are distinguishable.

Defendant cites *Tarzian v. Kraft Heinz Foods Co.*, 2019 WL 5064732 (N.D. Ill. Oct. 9, 2019), which also involved a claim that a defendant had falsely claimed its product contained "no artificial preservatives." *Id*. at *1 (N.D. Ill. Oct. 9, 2019). In *Tarzian*, the plaintiff alleged a common industry practice and then asked the court to infer that the defendant acted in conformity with that practice. "Plaintiffs allege that Capri Sun contains industrially manufactured citric acid, and industrial citric acid is artificial because it is usually produced through the industrial fermentation process." *Id*. at *4 The court found that an allegation of "usual" industry practice was insufficient: "That is too great of an inferential leap." *Id*. at *4.

By contrast, while Plaintiff has included allegations about industry practice—"for years, 99% of the world's citric acid has been produced via the fermentation process"; global demand for citric acid "far exceeds" the global capacity to produce it "naturally" (FAC ¶¶ 37-39)—she has alleged more. She has alleged a host of reasons it is more likely than not, again Plaintiff's ultimate burden

of proof, that La Terra Fina uses artificial citric acid in its Dips. In addition to the facts just mentioned, she has also alleged the reasons virtually all citric acid used in foods is manufactured through large-scale fermentation plants:

- Cost effectiveness of fermentation-based production. *Id*. ¶ 39;

- "Citrus fruits only contain 4-8% citric acid by weight in their juice. … The high demand for citric acid far exceeds the available supply from citrus fruits." *Id*. ¶ 37;

- industrial fermentation process is far more economical because:

  o unlike growing citrus fruit, microbial fermentation can be performed year-round anywhere in the world;

  o the input materials and chemicals for production are cheap;

  o production in bioreactors is not labor intensive; and

  o the relative operating costs are significantly lower."

  *Id*. ¶¶ 40-41.

- that "essentially all citric acid used in the food industry is produced through fermentation process." *Id*. ¶ 42.

Given those factual allegations, it is not a great "inferential leap" to conclude that La Terra Fina at least more likely than not uses manufactured citric acid in its Dips. Plaintiff's allegations are thus sufficient under Rule 8.

## II. THE "NATURAL FLAVOR" AND "ORGANIC" REGULATIONS DEFENDANT CITES ARE IRRELEVANT AND DO NOT PREEMPT PLAINTIFF'S CLAIMS.

Defendant relies on FDA regulations in support of its contention that manufactured citric acid can sometimes be considered "natural" or organic. Defendant's theory is that a "natural" ingredient is "perforce not 'artificial.'" Br. at 18. For the most part, Defendant's argument is an attempt to show that even if the citric acid it uses is (as Plaintiff alleges) industrially produced through fermentation, it can nevertheless be "natural" or not "artificial" as a matter of federal law. Thus, Defendant reasons, because citric acid can sometimes be considered "not artificial" under certain

11

FDA regulations, Plaintiff's allegations fail to move Defendant's conduct from the realm of lawful conduct to unlawful. Defendant also cites the National Organics Program for the proposition that citric acid can be "nonsynthetic" in the context of products claimed to be "organic," which is even more irrelevant.

Also, Defendant contends (though in the highly abbreviated form of two sentences) that "to the extent Plaintiff's claim is premised on a theory that La Terra Fina's citric acid is artificial despite being made in a way that qualifies as 'natural' under FDA regulations or the NOP, **her claim is preempted**." Br. at 20 (emphasis added; *see also* ECF 18 at 18 (same)). Previously, the Court did not consider those sentences to rise to the level of a preemption argument,[2] and Plaintiff agrees that on a complex issue like preemption, a two-sentence contention is not a serious argument but is a waiver of the argument, at least for present purposes. Nevertheless, because La Terra Fina explicitly makes the claim, albeit cursorily, Plaintiff is compelled to respond. And as with its other claims about federal law, La Terra Fina is wrong on this score, too.

As an initial matter, it bears noting the obvious: unless federal law preempts state law, the fact that federal law *permits* certain conduct does not mean *ipso facto* that state law cannot prohibit the same conduct. In those instances, states are free to regulate or prohibit that conduct in the absence of any constitutional or other state law limits on that power. Huge swaths of state law govern conduct left to the states, conduct which federal law neither regulates nor prohibits and in that sense "permits." Only when federal law "authorizes" or "mandates" conduct that state law prohibits does the possibility of federal preemption arise.

---

[2] 3/31/25 Order at 8 ("In the Court's understanding, La Terra Fina [does] not … argue those regulations govern how preservatives must be identified on food labels or packaging.").

In the present case, Defendant has cited no authority at all for the proposition that federal law either mandates or authorizes its use of the phrase "no artificial preservatives." At best, one could say that federal law *permits* such a claim but only because it does not prohibit it—and even that is not so when the claim is false, as it is here; federal law also prohibits false food label claims. Thus, even if federal law "authorizes" the use of the terms "natural" as applied to citric acid's *flavor* properties or "organic," that does not mean Illinois cannot also prohibit claims that a food containing the same citric acid has "no *artificial preservatives*."

## A. Federal regulation of "natural flavor" descriptors is irrelevant to Plaintiff's claim that Defendant's "no artificial preservatives" claim is deceptive under the ICFA.

Defendant again relies on FDA regulations governing the use of the term "natural" as applied to food flavorants, regulations which are irrelevant here: "FDA regulations provide that a 'natural' substance includes 'essence[s] or extractive[s]' 'derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, … or fermentation products thereof,'" citing 21 C.F.R. § 101.22(a)(3). Defendant's recycling of that flawed argument is surprising given that Plaintiff previously pointed out that it is misleading, so a more complete quotation of the regulation is apparently necessary. It provides:

> The term **natural flavor** or *natural flavoring* means the essential oil, oleoresin, essence or extractive, protein hydrolysate, distillate, or any product of roasting, heating or enzymolysis, which contains the flavoring constituents derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, seafood, poultry, eggs, dairy products, or fermentation products thereof, whose significant function in food is flavoring rather than nutritional. Natural flavors include the natural essence or extractives obtained from plants listed in §§ 182.10, 182.20, 182.40, and 182.50 and part 184 of this chapter, and the substances listed in § 172.510 of this chapter.

(emphases in original). Section 101.22(a)(3) does not define "natural" in isolation nor in any context other than in reference to flavor. It lends no support whatsoever to the claim that would

13

justify La Terra Fina's hypothetical use of the term "natural" or its actual claim that its Dips contain no artificial *preservatives*.

La Terra Fina's continued reliance on this regulation is even more unjustifiable because of what it ignores in the very same regulation. Subsection (a)(5) defines "chemical preservative" as:

> any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties.

As Plaintiff has alleged (at ¶ 24), citric acid "tends to prevent or retard deterioration" of food. Citric acid is not a salt, sugar, vinegar, spice, or oil. Citric acid is not "added to food by direct exposure thereof to wood smoke." Citric acid is not a "chemical[] applied for [its] insecticidal or herbicidal properties." In short, citric acid *is* a "chemical preservative," by the terms of the very regulation upon which La Terra Fina relies in support of its flawed argument.

Because § 101.22(a)(3) does not define "natural," it is unhelpful to the question of whether Plaintiff has alleged that manufactured citric acid is an "artificial preservative." With that essential premise—that manufactured citric acid can be "natural" and thus "perforce not 'artificial'"—out of the way, Defendant's argument for dismissal crumbles: having failed show that manufactured citric acid is "natural" under § 101.22(a)(3), Defendant has failed to show that Plaintiff's allegations do not squarely place Defendant's conduct in the realm of unlawful conduct. To the contrary, a mere two subsections later the same regulation defines "chemical preservative," a definition which describes citric acid without including it among other specifically named substances excluded from the definition. If anything, § 101.22(a) is further reason to deny Defendant's motion, not grant it.

**B. The federal regulation of "organic" descriptors is irrelevant to Defendant's deceptive claim of "no artificial preservatives."**

Defendant also recycles its argument based on the federal National Organic Program (NOP), which "is a federal regulatory program that develops and enforces consistent national standards for organically produced agricultural products." *See* https://www.ams.usda.gov/about-ams/programs-offices/national-organic-program. The NOP regulates the labeling of products represented as "organic." 7 C.F.R. §§ 205.102, § 205.605. But Plaintiff has not challenged Defendant's use of the term "organic," if it even used the term. Further, even if manufactured citric acid may theoretically qualify as "nonsynthetic" under the NOP—a claim which La Terra Fina notably has not made—that only means Defendant *might* be authorized to describe its Dips as "organic" under the NOP. It does not follow, however, that the Dips are not "artificial" for purposes of state law. The NOP is simply irrelevant.

**C. "OMRI" is an international nonprofit organization; it is not an agency of the government; it is not overseen by the government. It is not the government.**

Plaintiff objects to Defendant's suggestion (at 17 n.2) that the Court may take judicial notice of the website of "an international nonprofit organization," which is unironically how the website of OMRI describes the organization. But we fight fire with fire: "The Organic Materials Review Institute (OMRI) is *an international nonprofit organization* …." (https://www.omri.org /about, last accessed June 11, 2025). The only justification La Terra Fina argues for the Court to take judicial notice is relegated to a footnote blithely asserting that OMRI's "website is equivalent to a government website and therefore can be judicially noticed citing a case that merely "recognized the authority of a court to take judicial notice of government websites." *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 648 (7th Cir. 2011).

Entirely ironically, however, La Terra Fina pivots, describing OMRI as "a '[nongovernmental] entity.'" Br. at 19. La Terra Fina inserted "nongovernmental"—which is

15

accurate but completely at odds with La Terra Fina's "argument" that OMRI's website can be judicially noticed because is practically the government.

La Terra Fina next claims that "OMRI's website lists suppliers of various products OMRI has deemed to be nonsynthetic *and hence natural*." And hence natural? The internet links to which Defendant cites say nothing about "natural." Moreover, they are outside the four-corners of the complaint (no citation necessary) and not the subject of an actual request that the Court take judicial notice of them. They do not support dismissal here.

On the merits—and aside from the fatally defective basis for asking the Court to take judicial notice of OMRI's website in the first place—the links cited do not support *either* of La Terra Fina's claims. First, the working links (some lead to 404-error messages) do not suggest that there are "suppliers" of OMRI-designated-"nonsynthetic"-citric-acid, if there even is such a thing (talk about plausibility). Second, the websites linked do not even suggest that OMRI designates manufactured citric acid as "nonsynthetic," much less that it does so in such an unexplained-but-significant way that it should preclude an otherwise common-sense pleading of a state law claim.

In the end, what La Terra Fina offers the Court is this: OMRI [dispensing with even explaining the meaning of the acronym "OMRI," as if it were the FBI or KKK—nothing like OMRI's actual international-but-obscure nonprofit organization status] should be treated for purposes of judicial notice like the U.S. government. Source? A case saying the U.S. government should be treated like the U.S. government (*Pickett*). If La Terra Fina were serious enough about its suggestion that the Court *can* take judicial notice of OMRI's entire website to request affirmatively that the Court *do* so, then it should have filed a motion and articulated a coherent rationale for such an absurd result with working hyperlinks. In any event, the Court should not regard the footnoted comment that a government website "can be judicially noticed" as a request that the Court actually do so.

16

**D. Plaintiff's state law claims are not preempted.**

La Terra Fina also makes a two-sentence claim of federal preemption in its red-herring discussion of federal regulations. Defendant first contends (at 12) that "to the extent Plaintiff's claim is premised on a claim that La Terra Fina's citric acid is artificial despite being made in a way that qualifies as 'natural' under FDA regulations or the NOP, her claim is preempted." But as just discussed, the two regulations Defendant cites pertain to "natural flavor" and "organic" claims. Neither § 101.22(a)(3) nor the NOP addresses claims about artificial preservatives.

The cases Defendant cites breathe no life into its preemption claim. The Food, Drug, and Cosmetic Act preempts "any requirement ... made in the label or labeling of food that is not identical to the requirement of section 343(r)." *Turek v. Gen. Mills, Inc.*, 662 F.3d 423, 426 (7th Cir. 2011). 21 U.S.C. § 343-1. So when a federal requirement "lists labeling disclosures that are affirmatively required, state law may not tack on further required disclosures that the federal standard does not mention." *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 484 (7th Cir. 2020). As Defendant itself notes, in *Turek*, "[t]he disclaimers that the *plaintiff wants added to the labeling* of the defendants' inulin-containing chewy bars *are not identical* to the labeling requirements imposed on such products by federal law, and so they are barred." And as *Bell* explains, there is a dispositive difference between trying to add something to a food label and challenging claims that producers voluntarily place on their labels. Any additions must be identical to federal requirements, but statements on labels that are not required by federal law can be prohibited by state law. 982 F.3d at 484. (Defendant also cites *Gubala v. CVS Pharmacy, Inc.*, 2015 WL 3777627 (N.D. Ill. June 16, 2015), but that case represents a straightforward application of these principles.) Ms. Vineyard does not seek to add anything to La Terra Fina's labels. She seeks to hold Defendant liable for the deceptive language that it voluntarily placed on its labels. *See also Simeone v. T.*

17

*Marzetti Co.*, 2023 WL 2665444, at \*8 (S.D.N.Y. Mar. 28, 2023) (challenge to "no preservatives" claim not preempted because plaintiffs did not seek "additional labelling").

## III. TO THE LIMITED EXTENT RULE 9(b) APPLIES, PLAINTIFF'S ICFA ALLEGATIONS SATISFY THE RULE'S PLEADING STANDARD.

La Terra Fina maintains (at 22-23) that the pleading standard of Rule 9(b) applies to Plaintiff's ICFA claims (Counts I and II for deception and unfairness) and that "[b]ecause Plaintiff's claim falls short of Rule 8's pleading standards, it necessarily fails Rule 9(b)'s." But Defendant glosses over a number of key points.

### A. Rule 9(b)'s pleading standard does not apply to Plaintiff's nonfraud allegations.

By its plain terms, Rule 9(b) applies only to allegations of fraud or mistake. This is the reason that when "both fraudulent and nonfraudulent conduct violating the same statute or common law doctrine is alleged, only the first allegation can be dismissed under Rule 9(b)." *Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan ex rel. Lyon v. Buth*, 99 F.4th 928 (7th Cir. 2024) (quoting *Kennedy v. Venrock Assocs.*, 348 F.3d 584, 593 (7th Cir. 2003)). "Thus, if a court thinks a plaintiff has failed to plead fraud, it must disregard averments of fraud not meeting Rule 9(b)'s standard and then ask whether a claim has been stated." *Id*. La Terra Fina ignores these basic principles.

In addition, the Illinois Consumer Fraud Act "allows a plaintiff to premise her claim on either deceptive conduct or unfair conduct (or both), but 'the two categories have different pleading standards.'" *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019). "If the claim rests on allegations of deceptive conduct, then [Federal Rule of Civil Procedure] 9(b) applies and the plaintiff must plead with particularity the circumstances constituting fraud." This means as a practical matter that she must identify the "who, what, when, where, and how" of the alleged fraud. On the other hand, Rule 9(b)'s heightened pleading standard does not apply to an allegation of unfair conduct, because fraud is not a required element under that branch of the

18

statute. *Id.*; *accord Womick v. Kroger Co.*, 2022 WL 673095, at \*2 (S.D. Ill. Mar. 7, 2022). Rule 9(b) therefore does not apply to Plaintiff's ICFA unfairness claim, Count II.

And Defendant's argument that Plaintiff's ICFA claims necessarily fail Rule 9(b)'s pleading standard because they fail Rule 8's pleading standard ignores the factual bases of Defendant's Rule 8 argument: that Plaintiff supposedly failed to plausibly allege that La Terra Fina adds citric acid to its dips or that the citric acid functions as a preservative in the dips—nonfraud allegations. Rule 9(b) is inapplicable to those allegations.

## B. Plaintiff's fraud allegations satisfy Rule 9(b)'s pleading standard.

Plaintiff's only claim "sounding in fraud" is Count I—deception under the ICFA. Rule 9(b)'s particularity requirement means "[a] plaintiff ordinarily must describe the 'who, what, when, where, and how' of the fraud—"the first paragraph of any newspaper story.'" *U.S. ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016). "In the context of the ICFA, this means that a plaintiff must identify 'the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated.'" *Breeze v. Bayco Prod. Inc.*, 475 F. Supp. 3d 899, 906 (S.D. Ill. 2020).

"While applying this shorthand to describe the requirements of Rule 9, we also have warned that courts and litigants often erroneously take an overly rigid view of the formulation and that the precise details that must be included in a complaint may vary on the facts of a given case." *Presser*, 836 F.3d at 776. "[O]ne cannot focus exclusively on the fact that Rule 9(b) requires particularity in pleading the circumstances of fraud without taking account of the general simplicity and flexibility contemplated by the federal rules, as well as the strictures of plausibility pleading." 5A *Fed. Prac. & Proc. Civ.* § 1298 (4th ed.). In that same vein, while "Rule 9(b) requires specificity, … it does not insist that a plaintiff literally prove his case in the complaint." *United*

19

*States v. Molina Healthcare of Ill., Inc.*, 17 F.4th 732, 741 (7th Cir. 2021). Just as Rule 8's "plausibility standard is not akin to a 'probability requirement,'" *Iqbal*, 556 U.S. at 678, Rule 9(b)'s pleading standard is not a probability standard, either.

Although it acknowledges (at 22-23) that Plaintiff's burden is to allege the who, what, when, where, and how of the fraud, La Terra Fina makes no attempt to show that Plaintiff has failed to carry that burden. Plaintiff identifies who made the misrepresentation; La Terra Fina did, but it has not challenged Plaintiff's allegation of the "who." Plaintiff identifies the time and place of the misrepresentation—on the label during the period when the label made the "no artificial" representations and the dips contained artificial citric acid, but again, Defendant has not challenged Plaintiff's allegation of the "when" or "where." Plaintiff alleges why Defendant's "no artificial preservatives" claim is false: because Defendant promises consumers "no artificial preservatives," even though it adds manufactured citric acid to its dips. FAC at ¶ 6.

Unable to identify any missing allegations required by Rule 9(b), Defendant instead resorts to a different standard supposedly articulated in a lone out-of-circuit district court case. Defendant says "[t]o plead with particularity any mislabeling, Plaintiff must allege 'why the statements on the packaging of the … Products are false, how she learned they were false, [and] when she learned they were false." Def. Mem. at 14 (quoting *Arabian v. Organic Candy Factory*, 2018 WL 1406608, at *4 (C.D. Cal. Mar. 19, 2018)). In fact, La Terra Fina misreads *Arabian*.

*Arabian* involved a challenge to a manufacturer's gummy candies, which the plaintiff believed contained boysenberry, blackberry, and raspberry ingredients. *Id*. at *1. The front of the package contained several claims, including "a cubilicious mix of Boysenberry, Blackberry & Raspberry," *Id*. The back-label ingredients list did not include boysenberry, blackberry, or raspberry." *Id*. The plaintiff failed to allege any facts suggesting the gummy label was false in any respect.

20

> In the FAC, Plaintiff alleges that, "[s]ubsequent to her purchase, [Plaintiff] *learned about* the lack of Real Ingredients in Gummy Cubs." These are the type of conclusory allegations that Rule 9(b) was designed to prohibit. Plaintiff does not adequately set fourth why the statements on the packaging of the Class Products are false, how she learned they were false, or when she learned they were false. Stating that Plaintiff "learned about" why the packaging labels were false lacks the particularity that Rule 9(b) requires. Id.

*Id*. at *4 (citations omitted; emphasis in original).

Given that the plaintiff's sole allegation about the lack of "real ingredients" was that subsequent to her purchase she "learned about" the lack of real ingredients, it is hardly surprising that the court thought that allegations about how or when she "learned about" the lack of real ingredients might shed some light on Rule 9(b)'s "how" requirement: how the label was false. But La Terra Fina's claim notwithstanding, the court did not even remotely suggest that Rule 9(b) *requires* a plaintiff in a mislabeling case to "allege 'why the statements on the packaging of the … Products are false, how she learned they were false, [and] when she learned they were false." Indeed, the sole case the court cited after noting that the plaintiff had not alleged how or when she learned of the alleged falsity was *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047 (9th Cir. 2011). And, consistent with the law in this Circuit, *Cafasso* held that Rule 9(b) merely requires a pleader to "identify 'the who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent] statement, and why it is false.'" *Id*. at 1055.

## C.  Plaintiff has sufficiently pled ICFA unfairness.

Defendant also contends (at 22) that Plaintiff's claim of ICFA unfairness "fails for the same reasons described above." Defendant cites *Jackson v. SFC Glob. Supply Chain, Inc.*, 2021 WL 3772696 (S.D. Ill. Aug. 25, 2021), with the parenthetical that this Court dismissed "ICFA unfair conduct claim because the plaintiffs 'ha[d] not plead[ed] additional facts showing that the labels

21

were unfair for other reasons beyond their formulaic claims that the labels offend public policy and are immoral, unethical, and unscrupulous.'" While that is true as far as it goes, it is misleading.

*Jackson* involved two claims, a "preservative free" and a "no artificial flavors" claim. *Id*. at *1. The Court dismissed the unfairness artificial-flavors claim, which is the portion of the ruling Defendant cites. But the Court allowed the preservative-free claim to stand. *Id*. at *2 The Court dismissed the "no artificial flavors" claim because the plaintiffs had failed to plead sufficiently that it was false. *Id*. (citing 21 C.F.R. § 101.22). But the plaintiffs' allegations "that the pizzas contained sodium stearoyl lactylate, mono-and diglycerides, and enzymes," and "that mono- and diglycerides function as 'food-grade emulsifiers ... to create a softer crumb and extend the shelf life of breads and crusts by inhibiting or slowing down retrogradation'" and "that enzymes 'inhibit or slow retrogradation of the starches leading to 'dryness,' especially in breads and crusts'" were sufficient "to show that the pizzas contained ingredients that function solely as preservatives." *Id*. The Court held that those allegations were a sufficient to support the preservative-free claim is false. And because "[f]alse advertising alone is an unfair practice under the ICFA," "Plaintiffs have stated a claim for unfair conduct under ICFA." *Id*. at *3.

Similarly here (and as discussed above), Ms. Vineyard has adequately pled that Defendant's claim of no artificial preservatives is false. That, in turn, means she has sufficiently pled a claim for ICFA unfairness.

### D. Plaintiff has standing to assert and sufficiently pled claims on behalf of non-Illinois class members.

Defendant argues (at 23) for dismissal of Plaintiff's nationwide class allegations on the grounds that she lacks "statutory standing to pursue the … claims under the non-Illinois laws referenced in the Amended Complaint." But "[p]laintiffs have standing if they have been injured, the defendants caused that injury, and the injury can be redressed by a judicial decision." *Bohen v.*

22

*ConAgra Brands, Inc.*, 2024 WL 1254128, at \*4 (N.D. Ill. Mar. 25, 2024) (citing *Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 536 (7th Cir. 2011) ("Plaintiffs allege that they were victims of ConAgra's deceptive advertising, and the Court can redress the injury"). "Nothing more is required for standing." *Id*.

The "proper framing" of Defendant's contention is whether Plaintiff can serve as a class representative for a multi-state class, including an Illinois class, when he has not purchased the Dips in other states. *Bohen.*, 2024 WL 1254128, at \*6 ("The proper framing of ConAgra's contention is whether Plaintiffs can serve as class representatives for a multi-state class, including the proposed Illinois subclass, when they have not purchased ConAgra products in other states").

> [A]s long as the named plaintiffs have [constitutional] standing to sue the named defendants, any concern about whether it is proper for a class to include out-of-state, nonparty class members with claims subject to different state laws is a question of predominance under Rule 23(b)(3), not a question of "adjudicatory competence" under Article III.

*Muir v. Nature's Bounty (DE), Inc.*, 2018 WL 3647115, at \*7 (N.D. Ill. Aug. 1, 2018) (quoting *Langan v. Johnson & Johnson Consumer Cos., Inc.*, 897 F.3d 88, 93 (2d Cir. 2018)).

The "prevailing view" of federal courts in the Northern District, "particularly recently, is that the issue is best framed through the class-certification lens, not standing." *Rawson v. ALDI, Inc.*, 2022 WL 1556395, at \*5 (N.D. Ill. May 17, 2022). In fact, that is the prevailing view of federal courts throughout Illinois.[3] And that view is the prevailing one because of the holding of *Morrison v. YTB International, Inc.*, 649 F.3d 533 (7th Cir. 2011).

---

[3] *See, e.g.*, *In re Hair Relaxer Mktg. Sales Pracs. & Prod. Liab. Litig.*, 2024 WL 4333246, at \*5 (N.D. Ill. Sept. 27, 2024); *Acosta-Aguayo v. Walgreen Co.*, 2023 WL 2333300, at \*8 (N.D. Ill. Mar. 2, 2023); *Carrol*, 2018 WL 1695421, at \*5; *Texas Hill Country Landscaping, Inc. v. Caterpillar, Inc.*, 522 F. Supp. 3d 402, 409-10 (N.D. Ill. 2021); *Flaherty v. Clinique Labs. LLC*, 2021 WL 5299773, at \*7 (N.D. Ill. Nov. 15, 2021); *Davis v. Baldwin*, 2017 WL 951406, at \*7 (S.D. Ill. Mar. 10, 2017) (denying motion to sever class allegations as premature); *Swires v. Incredible Scents, Inc.*, 2013 WL 4478198, at \*2 (S.D. Ill. Aug. 20, 2013) (denying motion to strike class allegations as premature); *E&G, Inc. v. Am. Hotel Register Co.*, 2018 WL 1334934, at

In *Morrison*, the defendant "moved to dismiss the claims of non-Illinois class members under Rule 12(b)(6), arguing the ICFA did not apply outside Illinois. The district court dismissed the non-Illinois plaintiffs for lack of 'standing.' The Seventh Circuit reversed." *Williams v. State Farm Mut. Auto. Ins. Co.*, 678 F. Supp. 3d 980, 1013 (N.D. Ill. 2023) (citations omitted). Standing was "no problem" in *Morrison* "because '[p]laintiffs have standing if they have been injured, the defendants cause that injury, and the injury can be redressed by a judicial decision.'" *Id*. "The *Morrison* Court went on to reason that the choice-of-law question—whether Illinois law applied to out-of-state plaintiffs—did not lend itself to resolution under Rule 12(b)(6)." *Id*. at 1014. "Because 'the complaint [did] not defeat application of Illinois law,' dismissal was improper. Surviving a Rule 12(b)(6) motion, of course, requires no more than 'narrat[ing] a plausible claim for relief.'" *Id*. (quoting *Morrison*; citations omitted).

Specifically, Courts have declined to strike nationwide class allegations at the pleading stage where a party argued that a variation in state laws made a nationwide class impracticable. *Acosta-Aguayo v. Walgreen Co.,* 2023 WL 2333300, at 8 (N.D. Ill. Mar. 2, 2023) (citing *Flaherty v. Clinique Lab'ys LLC,* 2021 WL 5299773, at *7 (N.D. Ill. Nov. 15, 2021)). This Court should do the same and defer ruling on any class allegations until certification, at which point the record will be more fully developed.

## IV.  PLAINTIFF HAS SUFFICIENTLY PLED BREACH OF WARRANTY AND UNJUST ENRICHMENT.

Defendant says (at 26-27) that Plaintiff has failed plausibly to plead breach of warranty and unjust enrichment for the same reasons her ICFA claims fail. And for the same reasons Defendant's

---

*2 (N.D. Ill. Mar. 15, 2018); *Mao-Mso Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 2018 WL 3420796, at *11 (C.D. Ill. July 13, 2018); *De Falco v. Vibram USA, Inc.*, 2013 WL 1122825, at *9 (N.D. Ill. Mar. 18, 2013); *Worix v. MedAssets, Inc.*, 869 F. Supp. 2d 893, 901 (N.D. Ill. 2012); *Boatwright v. Walgreen Co.*, 2011 WL 843898, at *2 (N.D. Ill. Mar. 4, 2011).

ICFA arguments fail, they also fail with respect to the breach of warranty and unjust enrichment claims.

Defendant also moves to dismiss the breach of warranty claim because Plaintiff purchased the dips from a grocer "and therefore is not in privity with La Terra Fina," citing *Larry Trover Produce, Inc. v. Nutrien Ag Sols., Inc.*, 2022 WL 594863, at *4 (S.D. Ill. Feb. 28, 2022). But as the Court noted in that case, federal district courts in Illinois have recognized a "direct relationship exception" to the privity requirement, though the Court did not reach the issue. *Id*. at *4 n.3 & accompanying text. The Court did address the exception's applicability in *York v. Andalou Nats., Inc.*, 2016 WL 7157555 (S.D. Ill. Dec. 8, 2016). There the Court held that "if a manufacturer 'expressly warranted its goods to the ultimate consumers and this was the basis for the bargain and relied upon by plaintiffs.'" *Id*. at *3 (quoting *In re McDonald's French Fries Litig.*, 503 F.Supp.2d 953, 957 (N.D. Ill. 2007)). The plaintiff there alleged that Defendant's claim that its products were "natural" "became part of the basis of the bargain in which Plaintiffs purchased Defendant's products, that Plaintiffs relied on the affirmations when making their purchasing decisions, and that Plaintiffs suffered damages as a result." *Id*. at *4. The Court held that those allegations "establish[ed] the exception for express warranties under Illinois law" and that the plaintiffs had therefore "sufficiently state[d] a claim for breach of express warranty." *Id*.

Ms. Vineyard has made the same allegations here that the plaintiff made in *Jackson*. FAC at ¶¶ 91-95, 98. For the same reasons the Court refused to dismiss the plaintiff's breach of warranty claim in *York*, it should do so here, too.

## CONCLUSION

The Court should deny La Terra Fina's motion to dismiss. If the Court concludes that Plaintiff's allegations are deficient in any respect, she respectfully requests leave to amend.

By:    /s/ Robert L. King
Robert L. King
king@kinglaw.com
The Law Office of Robert L. King
9506 Olive Blvd., Suite 224
St. Louis, Missouri 63132
(314) 246-0702

David C. Nelson
dnelson@nelsonlawpc.com
NELSON & NELSON, ATTORNEYS AT LAW, P.C.
420 North High Street, P.O. Box Y
Belleville, IL 62222
 (618) 277-4000

Matthew H. Armstrong
matt@mattarmstronglaw.com
ARMSTRONG LAW FIRM LLC
8816 Manchester Rd., No. 109
St. Louis, MO 63144
(314) 258-0212

Stuart L. Cochran
scochran@condontobin.com
Condon Tobin Sladek Thornton Nerenberg, PLLC
8080 Park Lane, Suite 700
Dallas, Texas 75231
(214) 265-3800

*Attorneys for Plaintiff and the Putative Class*


**CERTIFICATE OF SERVICE**

I hereby certify that on June 19, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which electronically delivered a copy of the same to all counsel of record.

/s/ Robert L. King
Robert L. King

26