IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TRICIA VINEYARD, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> LA TERRA FINA USA, LLC, <br><br> Defendant. | Case No. 3:24-CV-00704-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Welcome to Round Two of Defendant La Terra Fina USA, LLC's ("La Terra") effort to dismiss this putative class action. This case presents a familiar fact pattern: a consumer alleging a food product label tricked her into buying or paying an inflated price for the product, even though the product did not conform to the label's specifications. Here, Plaintiff Tricia Vineyard ("Vineyard") on behalf of herself and others similarly situated alleges that La Terra coaxed her into buying an Everything But The Bagel ("EBB") Dip & Spread when the lid marketed "NO ARTIFICIAL FLAVORS, COLORS OR PRESERVATIVES" (hereinafter "no artificial preservatives"). A closer look at the ingredient list, however, revealed citric acid—an alleged artificial preservative, commonly used in commercial food production.

The Court dismissed Vineyard's initial complaint on March 31, 2025, but granted her leave to amend. (Doc. 37) (the "First Dismissal Order"). Vineyard filed an amended

complaint (Doc. 42), and La Terra responded by filing another motion to dismiss. (Doc. 43). This motion is now fully briefed.

## BACKGROUND

Vineyard purchased the EBB dip at Schnucks in Swansea, Illinois, for $3.99. (Am. Compl. ¶ 9 (Doc. 42)). She was drawn to the product by its claim that it contained "no artificial preservatives." (*Id.*). This claim, according to Vineyard, is false, deceptive, and misleading because the EBB dip contains citric acid, a "mass-produced" food "preservative." (*Id.* ¶ 3). And the EBB dip is not alone. Vineyard alleges that the following La Terra dips also falsely claim to have "no artificial preservatives" even though they contain citric acid: Artichoke & Jalapeno Dip & Spread, Cheesy Artichoke Dip & Spread, Chili Con Queso Dip, Greek Yogurt Spinach & Parmesan Dip & Spread, Greek Yogurt Spinach Artichoke & Parmesan Dip & Spread, Green Chile & Cheese Dip & Spread, Mexicali Dip & Spread, Spinach Artichoke & Parmesan Dip & Spread, and Sriracha Three Cheese Dip & Spread (collectively "the Dips"). (*Id.* ¶ 1). The EBB dip's packaging looks like this:[1]

---

[1] Vineyard's amended complaint did not include images of the packaging, but La Terra provided these images as an exhibit to its first motion to dismiss. (Doc. 19, pp. 5-7). Throughout the amended complaint, Vineyard references the packaging, and it is central to her claims for deceptive consumer practices and breach of warranty. As such, the Court may consider these images at the motion to dismiss stage. *See Levenstein v. Salafsky,* 164 F.3d 345, 347 (7th Cir. 1998) (describing narrow exception permitting courts to consider documents attached to a motion to dismiss if they are referred to in the complaint and are central to plaintiff's claim).




Vineyard claims that citric acid in La Terra's products is derived from a "commercial, microbial/chemical manufacturing process," which produces a "white powder" that "does not occur in nature." (*Id.*). This "industrial process" ferments a fungus called *Aspergillus niger* and "chemically convert[s]" it into "citrate salt." (*Id.*). The citrate salt is then reduced to its final white powder form through "reagents like sulfuric acid." (*Id.*). Vineyard claims that 99% of the global production of citric acid occurs through this or similar fermentation processes. (*Id.* ¶ 4). Seventy percent of the world's citric acid that is produced this way, moreover, "is used in [the] food and beverage industry as an additive." (*Id.*).

It is cheaper for food companies to manufacture citric acid than to extract it from citrus fruits directly. (*Id.*). That is why, according to Vineyard, "the vast majority of citric acid used in food and beverages is manufactured." (*Id.*). And, based on these purported industry statistics and practices, Vineyard claims it is "highly probable" that La Terra uses manufactured citric acid in its Dips, like "virtually all" other food companies.

(*Id.* ¶ 5). With this, Vineyard concludes that La Terra's "no artificial preservatives" claim is false and misleading. (*Id.* ¶ 6).

Vineyard alleges that she paid a premium price for the EBB dip based on its alleged misrepresentation that it contained "no artificial preservatives." (*Id.* ¶ 8). If she had known that it did contain artificial preservatives, she would have either paid less for it or not purchased it at all. (*Id.*). La Terra's claim that the Dips contain "no artificial preservatives," moreover, leverages consumers' desire to eat healthy and to "avoid highly processed foods and chemical additives." (*Id.* ¶¶ 16, 51-54).

Citric acid is "artificial," according to Vineyard, because it is derived from "an industrial-scale manufacturing process." (*Id.* ¶ 33). She avers, on information and belief, that the citric acid that La Terra uses in the Dips was produced in a manner consistent with such a process. (*Id.* ¶ 35). This is so, she claims, because "[e]conomic, practical and technical" considerations demand the scale and efficiency that industrial production offers. (*Id.* ¶ 36). Moreover, the high demand for citric acid in various food products allegedly far outstrips the available supply of citrus fruits, thus necessitating a separate production process. (*Id.* ¶¶ 37-38). And this production process, in addition to satisfying the global demand for citric acid, is also "significantly more cost effective" for companies like La Terra compared to direct extraction from citrus fruits. (*Id.* ¶ 39). Fermentation-based citric acid production also offers the benefit of year-round availability, whereas citrus fruit production requires a specific climate and environmental conditions that may vary based on location and time of year. (*Id.* ¶ 41). Thus, Vineyard draws the following conclusion: "strictly as a statistical matter, it is far more likely than

not that La Terra uses manufactured citric acid in [the] Dips." (*Id.* ¶ 43). She also believes that, while she paid a "premium" price for the EBB dip, La Terra must have used artificial citric acid to produce it because she did not pay an "ultra-premium" price—which would have been necessary if La Terra had used "natural" citric acid. (*Id.* ¶ 44).

Vineyard's amended complaint asserts claims for deceptive and unfair practices in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") (Counts I and II), breach of express warranty (Count III), and unjust enrichment (Count IV). (Doc. 42 ¶¶ 68-103). She seeks to represent the following nationwide class of consumers:

> All persons who purchased "la terra fina" brand Dips during the five-year period prior to the original filing of this lawsuit on January 25, 2024, through the date of preliminary approval (the "Class Period"). The Dips are: Artichoke & Jalapeño Dip & Spread, Cheesy Artichoke Dip & Spread, Chili Con Queso Dip, Everything But The Bagel Dip & Spread, Greek Yogurt Spinach & Parmesan Dip & Spread, Greek Yogurt Spinach Artichoke & Parmesan Dip & Spread, Green Chile & Cheese Dip & Spread, Mexicali Dip & Spread, Spinach Artichoke & Parmesan Dip & Spread and/or Sriracha Three Cheese Dip & Spread. (*Id.* ¶ 59).

While she appears to assert claims under the ICFA on behalf of herself and other Illinois-based consumers, Vineyard also seeks to represent the nationwide class by bringing claims under "all other state consumer protection statutes" on the putative class members' behalf. (*Id.* ¶¶ 68-89).

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Thus, the plaintiff must offer "some specific facts to support the legal claims asserted in the complaint." *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021) (quoting *McAuley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citation modified)). A reviewing court, in turn, accepts as true the complaint's well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *Burke v. 401 N. Wabash Venture, LLC,* 714 F.3d 501, 504 (7th Cir. 2013).

## DISCUSSION

Since this is the second order on a motion to dismiss in this case, the Court finds it helpful to recount its previous findings from the First Dismissal Order. In that order, the Court observed the following deficiencies in Vineyard's complaint:

> Vineyard offers no additional factual allegations about the source or preparation of citric acid as an ingredient *in the Dips*, or even how it is unnatural. . . . Instead, she blankly states that food grade citric acid is manufactured, synthetic, and processed, and La Terra Fina uses such citric acid in its Dips for various purposes. (Doc. 37, pp. 14-15) (emphasis added).

The Court also found that "Vineyard must provide more support to her empty assertions that, because La Terra Fina uses food grade citric acid, it uses a variety that does not occur in nature." (*Id.*, p. 15). The First Dismissal Order thus made plain that Vineyard had failed to tie her allegations of artificiality to the citric acid used in the Dips.

Now, having carefully examined the amended complaint, the Court finds that it, too, fails to specify any wrongdoing *by La Terra*. Thus, Vineyard has again failed to plausibly allege the presence of "artificial" citric acid in the products that matter in *this case*. And while Vineyard offers more detail about the general fermentation process to produce citric acid from *Aspergillus niger*, her probability-based assumptions and claims concerning industry practice say nothing about the Dips themselves. The following discussion explains why she comes up short on each of her claims this second time around.

### A. Violation of the ICFA (Counts I and II)

The ICFA aims to shield consumers against unfair or deceptive acts or practices, including but not limited to the use of deception, fraud, false pretense, false promise, misrepresentation, concealment, or the omission of any material fact. 815 ILCS 505/2. To state a claim under the ICFA, a plaintiff must allege facts showing: "(1) that the defendant engaged in a deceptive or unfair practice; (2) with the intent that the plaintiff (or others) rely on the deception; (3) that the act occurred in the course of trade or commerce; and (4) that the deception caused actual damages." *Kahn v. Walmart Inc.*, 107 F.4th 585, 598 (7th Cir. 2024).

"[A] practice is deceptive if it creates a likelihood of deception or has the capacity to deceive." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019) (quotation marks omitted). Courts apply a "reasonable consumer" standard when evaluating whether a statement is deceptive or has the likelihood to deceive, which factors in the totality of the information available to the consumer at the point of

deception. *Kahn*, 107 F.4th at 598. Under this standard, a plaintiff must show that "a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Bell v. Publix Super Mkts., Inc.*, 982 F.3d 468, 474–75 (7th Cir. 2020) (quotation marks omitted).

A plaintiff may also allege that conduct is unfair without alleging that it is deceptive. *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010). Illinois courts consider three factors to determine if a practice is unfair: whether it (1) offends public policy, (2) is immoral, unethical, oppressive, or unscrupulous, or (3) causes substantial injury to consumers. *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738-39 (7th Cir. 2019) (quoting *Batson v. Live Nation Ent., Inc.*, 746 F.3d 827, 830 (7th Cir. 2014)). "A court may find unfairness even if the claim does not satisfy all three criteria." *Siegel*, 612 F.3d at 935. Ultimately, courts perform a case-by-case analysis to determine whether a practice is unfair. *Id.*

"If the claim rests on allegations of deceptive conduct, then [Federal Rule of Civil Procedure] 9(b) applies and the plaintiff must plead with particularity the circumstances constituting fraud." *Vanzant*, 934 F.3d at 738. That is, the plaintiff must identify the "who, what, when, where, and how" of the alleged fraud. *Id.* This heightened pleading standard discourages plaintiffs from engaging in "sue first, ask questions later" litigation and demands that they do their "homework" before bringing fraud allegations to court. *Pirelli Armstrong Tire Corp. Retiree Med. Ben. Tr. v. Walgreen Co.*, 631 F.3d 436, 439, 441 (7th Cir. 2011) (quotation marks omitted). For *unfair* conduct, however, Rule 9(b)'s heightened pleading standard does not apply. *Vanzant*, 934 F.3d at 739.

Vineyard advances her ICFA claims under fraud and unfairness theories. Consistent with the Seventh Circuit's approach in *Benson*, the Court will consider both "possibilities." *Benson*, 944 F.3d at 646. But because Count I is the only ICFA claim purporting to raise allegations of deception and fraud, the Court will examine Counts I and II separately to ensure a faithful application of the correct legal standards to the relevant allegations.

        *a. Fraud and Deception (ICFA) – Count I*

Vineyard claims that La Terra "engaged in a deceptive practice by misrepresenting that the Dips contain 'no artificial preservatives,' when the product actually contains manufactured citric acid." (Doc. 42 ¶ 71). Both parties agree that this and other allegations of fraud and deception, which underpin Count I of the amended complaint, are subject to Rule 9(b)'s heightened pleading standard. Vineyard believes she has met this standard by alleging that because 99% of the world's citric acid production occurs through an "industrial" process, La Terra must have used that process too. And because it probably did so, its claim that the Dips contain "no artificial preservatives" is deceptive under the ICFA. Her allegations of fraud, however, fail for a simple reason: the lack of a discernible nexus between the "industrial" fermenting process she describes *generally* and the citric acid production practices of La Terra.

Vineyard's entire theory of liability as it pertains to the products that matter to *this case* is based on her information and belief. While this does not mean she automatically flunks Rule 9(b), "a plaintiff who bases allegations of fraud on information and belief bears the burden of pleading plausible grounds for suspecting that the

defendant was engaged in a fraudulent scheme." *Pirelli*, 631 F.3d at 447. Moreover, allegations of fraud must relate to the defendant being sued—they cannot be based on speculative probabilities derived from the practices of others. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 738-39 (7th Cir. 2014); *Pirelli*, 631 F.3d at 447; *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849 (7th Cir. 2009). In *Pirelli*, for instance, the plaintiff alleged it had been defrauded by the defendant, in part based on allegations of fraud in a separate lawsuit, which had raised a similar theory of liability against the same defendant. *Pirelli*, 631 F.3d at 444. The Seventh Circuit rejected this allegation because the plaintiff was "relying on the mere fact of someone else's allegations, which evince little pre-complaint inquiry on [the plaintiff's] part and which speak to potential fraud in three other jurisdictions outside of Illinois in any event." *Id.*

Vineyard attempts to navigate around Rule 9(b) in a similar way—only with less information about the defendant she accuses of fraudulent conduct. She admits that her allegation that La Terra engaged in deceptive conduct is based on nothing more than a "statistical" likelihood. This likelihood, she explains, is established because "virtually all" food companies use citric acid derived from a fermentation process. But she has done *nothing* to corroborate her suspicion. And while the Court recognized in the First Dismissal Order that Vineyard was not required to produce "evidence" to support her claims (Doc. 15), she is not absolved from the obligation to do her "homework" before accusing La Terra of fraud. *Id.* at 439. As in *Pirelli*, Vineyard "needed," but did not have, "some firsthand information to provide grounds to corroborate [her] suspicions." *Id.* at 446; *see also Barreto v. Westbrae Natural, Inc.*, 518 F. Supp. 3d 795, 808 (S.D.N.Y 2021)

(holding that "general allegations regarding 'food fraud' and the flavor industry's scheme to use alternatives to natural vanilla . . . fail[ed] to tie these facts to the defendant's conduct or intent in any way."). Vineyard's allegations of fraud thus do not withstand scrutiny under Rule 9(b). *See, e.g.*, *Hawkins v. Coca-Cola Co.*, 654 F. Supp. 3d 290, 309 (S.D.N.Y. 2023); *Floyd v. Pepperidge Farm, Inc.*, 581 F. Supp. 3d 1101, 1112 (S.D. Ill. 2022); *Tarzian v. Kraft Heinz Foods Co.*, No. 18 C 7148, 2019 WL 5064732, at *4 (N.D. Ill. Oct. 9, 2019).

Vineyard relies on the Seventh Circuit's decision in *Lusby*, purportedly to contend that Rule 9(b) does not require her to prove her case at the pleading stage. She is, of course, correct that Rule 9(b) contains no such requirement. But that is where *Lusby*'s support for Vineyard's claims ends. In *Lusby*, the relator in a *qui tam* action under the False Claims Act, 31 U.S.C. § 3729, *et seq.*, alleged that his former employer, Rolls-Royce, had billed the government for certain engine parts even though the parts did not conform to the government's specifications. *Lusby*, 570 F.3d at 850. Because the complaint was based on allegations of fraud, it was subject to Rule 9(b)'s heightened pleading requirement. *Id.* at 853. The relator, who had worked for Rolls-Royce as an engineer, had alleged that (i) the parts in question did not meet the government's specifications, (ii) that internal testing data showed as much, (iii) that Rolls-Royce knew about the issue because he had flagged it for his superiors, and (iv) that Rolls-Royce nonetheless certified its compliance with government specifications to receive payment. *Id.* at 853-54. The court concluded that these allegations cleared the Rule 9(b) hurdle because Lusby had "allege[d] the promise, the intent not to keep that promise, and the *details of non-*

*conformity.*" *Id.* at 854 (emphasis added). And while the relator did not submit documentary evidence of false claims to the government—like an invoice—his complaint sufficiently alleged fraud with particularity. *Id.* at 854-55.

*Lusby* is easily distinguishable. In that case, the nature of the alleged fraud was explained in detail based on the relator's personal knowledge, unlike Vineyard who proceeds solely on information and belief. The relator in *Lusby* also tied his allegations *to the defendant*. Vineyard assigns liability based on unsupported statistical probabilities. Nothing in her complaint alleges "the details of non-conformity" in *La Terra's products*—a far cry from the relator's explanation of Rolls-Royce's nonconformity in *Lusby*. Perhaps if Vineyard had tested the EBB dip to identify the chemical make-up of its citric acid and found that it deviated from that of "natural" citric acid (something other plaintiffs in similar cases have done at the pleading stage),[2] or if she learned about La Terra's dip production process from a current or former employee, or if she had done any other investigative work to *corroborate* her suspicions about the Dips, she could have made a similar showing. But the amended complaint reveals no such information—only conjecture based on a "statistical" likelihood. *Lusby* thus does not support Vineyard's argument that probabilities—even strong ones—can satisfy Rule 9(b). If anything, *Lusby* supports the conclusion that allegations of fraud require a nexus between the alleged fraud and the defendant who allegedly committed it. *See id.* at 854-55 (holding that Rule 9(b) demands detailed allegations "so that vague and unsubstantiated accusations of

---

[2] *See, e.g.*, *Barreto v. Westbrae Natural, Inc.*, 518 F. Supp. 3d 795, 800-01 (S.D.N.Y. 2021)

fraud do not lead to costly discovery and public obloquy.").

Vineyard's allegations of fraud thus fall short of the heightened pleading standard demanded by Rule 9(b). This is fatal to Count I because it cannot survive La Terra's motion to dismiss without them. Accordingly, Count I will be dismissed.

### b. Unfair Trade Practices (ICFA) – Count II

Count II of the amended complaint alleging "unfair" practices by La Terra is largely based on the same allegations as Count I. Although these allegations are subject to the more forgiving standard of Federal Rule of Civil Procedure 8, Count II fails for the same reason as Count I: the lack of any allegations tied to La Terra.

The Northern District of Illinois's decision in *Tarzian v. Kraft Heinz Foods Co.* is on point. There, the plaintiffs alleged that Capri Sun beverages falsely claimed that they contained "no artificial preservatives." *Tarzian*, 2019 WL 5064732, at *1. Like Vineyard, the plaintiffs based their allegation of falsity on the presence of citric acid in Capri Sun. *Id.* And as Vineyard alleges here, citric acid was the culprit undermining the "no artificial preservatives" claim because it was "artificially produced on an industrial scale." *Id.* The allegations followed almost an identical playbook: (i) citric acid is "artificial" because it is derived from the fermentation of *Aspergillus niger*; (ii) this process is more "economically viable" for food companies than natural citric acid production; (iii) therefore Capri Sun beverages contain "artificial" citric acid. *Id.* Conspicuously absent from the complaint, however, was any allegation that *the defendant* "uses citric acid produced through *Aspergillus niger*." *Id.* The Court dismissed the plaintiffs' claims based on common law fraud and New York's Deceptive and Unfair Trade Practices Act because

the plaintiffs' theory of liability required "too great of an inferential leap." *Id.* at * 4. "To satisfy the pleading standards," the court explained, "Plaintiffs need to draw a connection between the common industry practice and the actual practice used by [the defendant]." *Id.* So, too, here. Even with the benefit of amendment, Vineyard has done nothing to substantiate her claim that the citric acid used in the Dips is artificial.[3]

Vineyard insists that she has alleged La Terra's use of artificial citric acid as a "virtual certainty." This is so, she argues, because she has alleged that 99% of the world's citric acid production occurs through an "industrial" fermentation process. And food companies, like La Terra, rely on this process for "[e]conomic, practical, and technical reasons." But when it comes to La Terra *specifically*, she has alleged close to nothing. Her allegations boil down to this: La Terra is a food company; food companies generally use artificial citric acid to save money; therefore, La Terra uses artificial citric acid in the Dips. These allegations fail to offer "specific facts" about La Terra's liability that would be needed to survive a motion under Rule 12(b)(6). *Bilek*, 8 F.4th at 586. And, as noted in the First Dismissal Order, while courts generally accept all well-pleaded facts as true, they are not obliged to accept as true *unsupported conclusions of fact* or legal conclusions. *Hickey*

---

[3] Vineyard attempts to distinguish *Tarzian* on the basis that the plaintiffs in that case only alleged that food companies "usually" use citric acid derived from industrial fermentation processes. *Tarzian*, 2019 WL 5064732, at *4. Vineyard, however, alleges that 99% of the world's citric acid production occurs by way of fermentation. Thus, so her argument appears to go, she has alleged a higher likelihood that La Terra uses artificial citric acid in the Dips than the plaintiffs in *Tarzian*. This is a distinction without a difference. Vineyard and the *Tarzian* plaintiffs assign liability to a specific defendant based on industry practice and nothing more. A claim that the food industry "usually" derives its citric acid from fermentation and one that alleges this practice 99% of the time are different only in degree, not in kind. *See Valencia Snapple Bev. Corp.*, No. 23-CV-1399, 2024 WL 1158476, at *5 (S.D.N.Y. Mar. 18, 2024) (even though plaintiff alleged that "none" of the citric acid produced today was natural, the "bare claim" that it was generally "made from mold rather than citrus fruit cannot, absent any allegation specific to the Products and absent any basis for her assertion about all citric acid, be sufficient.").

*v. O'Bannon*, 287 F.3d 656, 657-58 (7th Cir. 2002); *see also Zablocki v. Merchs. Credit Guide Co.*, 968 F.3d 620, 623 (7th Cir. 2020) (courts need not accept as true statements of law or unsupported conclusory factual allegations); *Midwest Orthodontic Assocs., Ltd. v. Cincinnati Cas. Co.*, 564 F. Supp. 3d 663, 668 (S.D. Ill. 2021) ("Well-pleaded facts, however, include neither legal conclusions nor unsupported conclusions of fact."). Vineyard's allegations fall into the category of unsupported conclusions of fact.

The amended complaint, at its core, is a pleading shortcut. Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79. The First Dismissal Order concluded that "[w]ithout a sufficient allegation that *La Terra Fina uses artificial citric acid*, there is no plausible inference that consumers were deceived by a label that claimed the Dips had 'no artificial flavors, colors or preservatives.'" (Doc. 37, p 15) (emphasis added). The amended complaint does not resolve this fundamental deficiency. The Court therefore cannot and will not draw an inference of liability against La Terra based on the conduct of the industry to which it belongs. Count II will thus be dismissed.[4]

### B. The Remaining Claims

As it did in the First Dismissal Order, the Court can make short work of Vineyard's remaining claims for breach of express warranty (Count III) and unjust enrichment (Count IV). (Doc. 37, p. 16). These claims are based on the same allegations that failed to

---

[4] La Terra has also raised other dispositive arguments in support of its motion to dismiss, including the issue of whether citric acid is an "artificial" substance to begin with, regardless of its preparation. The Court does not reach this and other issues here because they are unnecessary to the disposition of the instant motion to dismiss.

support Vineyard's claims under the ICFA. Vineyard's failure to plausibly allege that the citric acid used in the Dips is "artificial" necessarily means that Counts III and IV fail to state a claim upon which relief can be granted. Thus, Counts III and IV will be dismissed.

## CONCLUSION

For these reasons, La Terra's Motion to Dismiss Vineyard's Amended Complaint (Doc. 43) is **GRANTED**. Vineyard's consent motion for leave to file excess pages (Doc. 46) is **GRANTED**.

At this stage, the Court harbors some skepticism about Vineyard's ability to advance a cognizable claim against La Terra. Nevertheless, because leave to amend should be granted freely under Rule 15(a)(2), the Court affords Vineyard a second and final opportunity to amend her complaint. *See Global Tech. & Trading, Inc. v. Tech Mahindra Ltd.*, 789 F.3d 730, 733 (7th Cir. 2015). If Vineyard chooses to file a second amended complaint, she **SHALL** do so on or before **March 30, 2026**.

**IT IS SO ORDERED.**

DATED: February 27, 2026

*/s/ Nancy J. Rosenstengel*

**NANCY J. ROSENSTENGEL**
**United States District Judge**